### John B. Byrne *v.* The Union Bank of Louisiana.

The provisions of the 8th section of the act [of 2 April, 1832,] incorporating the Union Bank of Louisiana, as to the mortgages to be given by the subscribers to the stock of the bank, relate to the taking of the mortgage in the first instance, and not to any subsequent transfers of the stock thus secured.

The provisions of sect. 24 of the same act, on the subject of the reduction of the number of shares of stock where the security offered is insufficient, refer to the first steps required in order to become a stock-holder. Nothing in that act authorizes a reduction of the number of shares of stock, where the property first offered and accepted to secure the whole, becomes less valuable.

The clause in the 29th section of the same act, which declares that, " whenever application shall be made by a stockholder to transfer his stock and be discharged, such transfer and discharge may take place upon the new stockholder's furnishing

mortgage to the satisfaction of at least a majority of all the directors," applies only where a stockholder, having sold his stock alone, retaining the immoveable mortgaged to secure it, applies to have his property released from the mortgage, on the purchaser of the stock offering other property, of sufficient value, to be mortgaged in lieu of it.

There is nothing in the charter of the Union Bank which authorizes the directors to prevent the alienation of the stock of the bank, together with the real estate mortgaged to secure it, by refusing the purchaser the rights and privileges of a stockholder. In case of a refusal to transfer the stock, the bank will be liable in damages ; and where the stock has depreciated since the request for a transfer was made, the difference between its value at that time, and at the time of the trial, is the measure of the damages for which the bank will be liable.

Appeal from the District Court of the First District, *Buchanan*, J.

Bullard, J. The plaintiff sues to compel the president and directors of the Union Bank of Louisiana, to transfer to him upon their books two hundred shares of their capital stock, of which he alleges himself to be the owner, by purchase from the Citizens Bank of Louisiana, and for $3,000 damages for their illegal refusal to transfer said stock :

The stock in question is secured by mortgage on city property, which formerly belonged to the plaintiff, and which property, together with some other, was originally held sufficient to secure three hundred and fifty shares of the same stock, and the plaintiff was recognised as a stockholder for that amount. He afterwards sold a part of the property situated at the corner of Canal and Carondelet streets, and two hundred shares, to the Citizens Bank, and that institution was thereupon admitted as a stockholder in the Union Bank. The plaintiff afterwards purchased from the Citizens Bank the same property, and the same amount of stock, and applied to the Union Bank to be recognised as a stockholder, by having the stock transferred in his name on the books of the bank, according to its by-laws. This was refused, and the present suit brought.

The defendants answer that this action cannot be maintained, because it is altogether discretionary with the Board of Directors, to permit or refuse the transfer of the stock of said institution.

They further answer, that they refused to the Citizens Bank,

in the present instance, the transfer prayed for, because the Citizens Bank, being the owner of the property and stock in the petition mentioned, and being largely indebted to the Union Bank, refused, in bad faith, to use their credit as stockholders, and thereby to diminish their liabilities towards the defendants.

And also because, although the said property was formerly of sufficient value to secure two hundred shares of the capital stock, yet, at this time, the diminution of value and deterioration of said property are such, that it is no longer of sufficient value to secure the same.

The judgment of the District Court was against the plaintiff and he appealed.

The counsel for the appellees relies, first, upon the 8th section of the charter of the Union Bank, which provides, that to secure the payment of the capital and interest of the bonds subscribed by the State, the subscribers shall be bound to give mortgage, to the satisfaction of the directors, on property, to be in all cases at least equal to the amount of their respective stock.

We think it quite clear that the provisions of the 8th section relate to the taking of the mortgage in the first instance, and not to any subsequent transfers of the same stock, thus secured. It establishes the rule that the directors shall always require a mortgage on property equal in value to the amount of the stock.

It is further contended, that the 24th section makes the directors judges of the sufficiency of the mortgages offered for stock and loans. That is true; and it provides further, that they shall have power to refuse, or reject the same, if not sufficient; and shall, in such case, require further security, or, in default, reduce the *shares of such defaulters*, to the amount satisfactorily furnished. This reduction of stock necessarily refers to the first step required in order to become a stockholder. There is no provision in the charter authorizing a reduction of the number of shares of stock, if the property first offered and accepted to secure it, becomes of less value. By the 31st section, each stockholder is entitled to a credit equal to one half of the total amount of his shares; and as soon as the security

is once given to the satisfaction of the directors, the subscriber becomes a stockholder, and is entitled to all the privileges secured to him by the charter. While the Citizens Bank was owner of the two hundred shares in question, the defendants so far from requiring additional security, or refusing to that corporation the rights of a stockholder to that extent, complain, in their answer, that they acted in bad faith in not employing the credit, to which they were entitled, in order to diminish their large indebtedness to the Union Bank.

The 29th section of the charter, to which our attention has also been called by the counsel for the defendants, provides that, " whenever application shall be made by a stockholder to transfer his stock and *be discharged*, such transfer and discharge may take place upon the new stockholder's furnishing mortgage to the satisfaction of at least a majority of all the directors ; and, in all such cases of transfer and discharge, the votes shall be taken by yeas and nays." Now it is contended, that an application by the Citizens Bank to transfer their stock to Byrne, is not to be granted as a matter of course, but, is to be granted, or refused, after the proposition has been laid before the Board of Directors, and examined by them ; if they have no objection, that is, if seven out of twelve directors consent to it, it is granted, otherwise it is refused ; because the 29th section of the charter requires that a majority of the whole number should consent ; and as the votes are taken by yeas and nays, it seems impossible they should be controlled by courts of justice.

We are not prepared to sanction such a construction of this clause in the charter. On the contrary, we think the provision in the 29th section is applicable only where a stockholder, having sold his *stock alone*, retaining the immovable mortgaged to secure it, applies to have his property released from the mortgage, upon the purchaser of the stock offering other property of sufficient value to be mortgaged in lieu of it. The section evidently refers to a new mortgage, to be given on other property by the transferree of the stock, as the condition upon which the first is discharged. In the case now before us it is not proposed to shift the mortgage from the property of the vendor of the stock to that of the purchaser. The property itself is sold *cum onere*—with

the incumbrance of the mortgage, and at the same time the privileges of a stockholder. We have not been able to find in the charter any provision which authorizes the directors to prevent the alienation of stock, together with the real estate mortgaged to secure it, by refusing to the purchaser the rights and privileges of a stockholder. The 4th section declares that owners of real estate in the State of Louisiana, and citizens thereof shall alone be entitled to subscribe; but it enacts that, "shares so subscribed shall be transferable only to such owners until after four years, when they shall be transferable to any owner of real estate in this State, whether citizen or not."

The application to have the stock transferred on the books of the bank to Byrne, was made by him rather than by the Citizen's Bank. The resolution rejecting the application states no reason for not complying with his request; but the cashier testifies that there were several reasons assigned; one was, that the property was not of sufficient value; and another, that the Citizens Bank was largely indebted to the Union Bank, and still is so, or was at the time of the trial. This last reason is without any foundation in law, because the stock was in no manner pledged or specially affected, and the indebtedness of the Bank did not prevent the alienation of the bank stock to a third person.

The court, therefore, erred, in our opinion, in giving judgment against the plaintiff. He was illegally deprived of the privileges of a stock-holder, and is entitled to damages. The standard of damages is, we think, the comparative value of the stock at the time the transfer was refused, and at the time of the trial. Some of the witnesses say it was worth, in July, 1842, from twelve to fourteen per cent above par, and had fallen to par. The president of the bank testifies that he, and Mr. Slidell purchased, in June and July, at five and a half per cent advance. The price at which it actually sold shows better what it was worth than the opinion of witnesses as to its value at the time; and the maxim applies, " in dubiis, id quod minimum est sequimur."

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed, and that the defendants do, within ten days after the notification of this decree, cause

the transfer of the stock to be made to J. B. Byrne, as prayed for in the petition; and that the plaintiff recover eleven hundred dollars damages, and costs in both courts.

*Grima,* for the appellant, cited, as to the amount of damages to which the plaintiff is entitled, Civil Code, art. 1928. Angell and Ames on Corporations, 319, *et seq.* 13 La. 229.

*H. R. Denis,* for the defendants.