## No 13.877.

### JOSEPH L. BOURDETTE VS. ADOLPHE H. SIEWARD.

#### SYLLABUS.

1. The violation by a person of the legal rights of another renders the latter liable for some damages, without proof of actual damage.

2. Damages claimed from the president of a corporation by a stockholder for having refused to allow him to inspect the corporation books, where the officer has not acted in bad faith, must be those of which the refusal is the legal proximate cause, and of these due proof must be made; remote, uncertain, collateral and speculative damages cannot be recovered.

A PPEAL from the Civil District Court, Parish of Orleans.—*St. Paul, J.*

*Clegg & Quintero,* for Plaintiff, Appellee.

*Buck, Walshe & Buck,* for Defendant, Appellant.

#### STATEMENT OF THE CASE.

The opinion of the Court was delivered by

NICHOLLS, C. J. Plaintiff sued to recover five thousand eight hundred dollars from the defendant for damages alleged to have been incurred by him. He averred in his petition that at the institution of

his action he was the owner of five hundred and sixty shares of stock of the New Orleans Gas Light Company; that in February, 1897, he was the owner of three hundred and ninety-eight shares of stock; that defendant was, in February, 1897, and was still the President of that company, and was then and was still the custodian of its books; that petitioner, as such stockholder, during the month of March, 1897, and various other dates, particularly on June 2, 1897, on which last date he was the holder and owner of five hundred shares of stock, claimed the right to inspect and examine the books of the company, wherein was recorded the amount of the capital stock subscribed, the names of the owners of the stock, the amount owned by them respectively, the amount of stock paid and by whom, the transfer of stock, and the date of transfer, and the assets and liabilities of the company; that he made formal demand of the right of inspection and examination guaranteed him by law, of the said Adolphe H. Sieward, President and custodian, and the exercise of this right was forbidden him and denied to him by the said Adolphe H. Sieward.

He demanded the exercise of this right and sought the information to be derived therefrom in order to determine the then present value of his holdings of stock and in order to guide his future action in reference to the shares of stock of the said company; that, in order to exercise this right and to enjoy the fruits thereof, petitioner was compelled to institute suit, and to obtain a writ of mandamus from the Supreme Court, requiring the said Adolphe H. Sieward, President, to open to petitioner's inspection and examination the aforesaid books of the company.

That Adolphe H. Sieward, President, as aforesaid, resisted by all means in his power the demand of petitioner, requiring him to prosecute the suit in the Civil District Court and in the Supreme Court of the State of Louisiana. and to finally compel the issuance of a rule for contempt. and only opened the books to the inspection and examination of petitioner under fear of imprisonment on the ——————— day of January. 1898, although a formal demand by suit and otherwise had been made in the early part of the year 1897, to-wit: on the 23rd day of February. 1897. and frequently thereafter: all of which will more fully appear by reference to the suit No. 52.548 of the docket of the Civil District Court entitled State ex rel. Joseph L. Bourdette vs. A. H. Sieward. et als.. reference thereto being made for greater certainty.

.That the information which he sought by his demand to inspect and examine the books aforesaid, which right was denied him, was necessary to petitioner in order to determine whether or not he would sell his then holdings in the shares of the company or whether or not he would purchase additional shares of the stock of the company; that the information which he has since obtained, and of which he is now possessed, and which he could have obtained at the time the inspection and examination of the books were denied him, is of such a character that it would have determined petitioner to sell his stock at the price then ruling in the open market, and would have prevented him from buying and would have determined him not to buy additional shares of the capital stock of the company, which he has purchased since those dates; that if petitioner had been permitted by the said Adolphe H. Sieward to obtain the information and a knowledge of the facts contained in the books of the company at the several times he demanded them, petitioner could have sold his shares of stock at prices ranging from one hundred and twenty-seven dollars per share of the par value of one hundred dollars, to one hundred and thirty-one dollars per share of the par value of one hundred dollars; that since obtaining the information which the books of the company afforded, and which he has obtained by the inspection and examination of the books, and which, had he been possessed of in March and April, 1897, he could and would have sold his stock at prices ranging above one hundred and twenty-seven dollars per share of the par value of one hundred dollars; that petitioner has since been unable, since he obtained the information afforded by the books aforesaid, to sell his shares in the open market for a greater price than one hundred and seventeen dollars per share of the par value of one hundred dollars.

Petitioner showed that at various times and dates at which he demanded to be permitted to exercise his right to inspect and examine the books aforesaid, which right was then and there denied him, these books afforded the information that the officers of the company, that the President himself, Adolphe H. Sieward, several members of the board of directors of the said company and others, who were holders of a large number of the shares of the company, were selling the same, and had sold their shares, which fact and information, if petitioner had been allowed to obtain it from the books aforesaid, would have determined petitioner to sell the shares of stock which he held at the then ruling prices, as above set forth, and would have determined

petitioner not to buy other shares, and petitioner would thereby have avoided the loss and damage that had come to him by the falling of the price of the shares aforesaid.

That at the several times hereinbefore set out, at which he made the demands to exercise his right to inspect and examine the books aforesaid, the exercise of which right was denied him, these books aforesaid afforded the information, nowhere else obtainable, of the fact that there had been spent by the company, through its President aforesaid, within the past few years, the sum of more than fifty thousand dollars ($50,000.00) for which no voucher appears, and the reason for which expense is to this date a secret and the truth concerning which is not exposed and not known to the shareholders; which information, if it had been afforded to petitioner at the time he made the demands aforesaid, would have determined petitioner to sell his shares of stock at the then ruling prices aforesaid, and would have prevented him from buying and determined him not to buy additional shares as aforesaid, and would have saved to petitioner the consequent loss and damage resulting to him from the fall in prices since that date, as hereinbefore set forth.

That there are other facts and additional information acquired by petitioner from the inspection and examination of the books since the same had been allowed by him and under the judgment of this court, which existed in the books and was obtainable from the books at the dates and times hereinbefore set out, and which was denied him, the exercise of his right to inspect and examine the books, which facts and information, if then and there allowed petitioner, or obtained by him, would have determined him to sell his shares of stock, and he could and he would have sold them for the price of one hundred and twenty-nine dollars per share of the par value of one hundred dollars, and for which shares he cannot now obtain a greater price than one hundred and twelve dollars per share of the par value of one hundred dollars.

That the denial of the right to inspect and examine the books aforesaid has caused petitioner further damage in expenses of a lawsuit hereinbefore referred to, in costs of court and attorney's fees in the sum of more than three hundred dollars, and that the acts and conduct of the said Adolphe H. Sieward in denying petitioner the right to inspect and examine the books aforesaid has caused petitioner damage in the manner and form herein set out in the sum of five thousand eight hundred dollars.

He subsequently filed a supplemental and amended petition in which he reiterated all of the allegations of his original petition and further alleged that formal demand to exercise the right to examine and inspect the books of the corporation was made on the 23rd of February, 1897, by formal letter addressed to the Secretary of the New Orleans Gas Light Company; that the same demand was made of Adolphe H. Sieward verbally before the institution of the suit No. 52,548 of the docket of the Civil District Court, entitled the State ex rel. Joseph L. Bourdette vs. The New Orleans Gas Light Company.

That formal demand was made by service of the petition and order issuing from the Civil District Court, as appears by the Sheriff's return therein in the aforsaid suit No. 52,548; that this demand, as set forth in the original petition herein filed, was made by Clegg & Quintero, attorneys, on behalf of and under direction of Joseph L. Bourdette, plaintiff, by letter dated June 2, 1897, and that day delivered to Adolphe H. Sieward, defendant herein.

And that a like demand was made in person by Joseph L. Bourdette by delivering a demand in writing on the 27th day of December, 1897, and that a demand to be allowed to examine and inspect the books of the New Orleans Gas Light Company in the custody and under the control of Adolphe H. Sieward, defendant, was constantly made by plaintiff in person and by letter during the year 1897, between the months of February and December of that year.

That these demands were made for the purpose, in the manner and under the conditions and circumstances as set forth in his original petition, and that each and every and all of these demands were refused and his right ignored and denied.

The defendant filed a number of exceptions, which were overruled; he then answered. After pleading the general issue, he admitted that at certain times the plaintiff did make demand as an alleged stockholder of the New Orleans Gas Light Company, to examine and inspect certain books of said corporation, but respondent did not recall, or was unable to say whether the dates and proof of such demands were correctly set forth in plaintiff's petition, and demanded strict proof thereof.

He admitted that he refused, so far as it was in his control, the inspection of the books demanded, but averred that in doing so he acted in good faith on the belief, upon legal advice given, that the said Bourdette, plaintiff herein, under the law as respondent then under-

stood it, had not made a proper demand and had not shown a just and reasonable ground for such inspection; and, in the interest of the corporation generally and other stockholders and parties concerned, and the discharge of his duty, as he understood it, respondent refused said inspection, believing that his refusal under the circumstances was entirely justifiable.

Respondent qualified the foregoing and said that, as a matter of fact, he did at all times agree and offer to permit the plaintiff to see and inspect certain of the books of the corporation of which he, respondent, believed gave all the information to which the plaintiff under his demand was entitled to, but refused only the inspection of certain other books, which respondent believed that plaintiff was not entitled to see at the time and under the circumstances of his demand.

He averred that he had reason to believe and did believe that the plaintiff was actuated by mere curiosity, or sought the inspection as a broker holding shares in his name for other persons than himself for speculative purposes. That the charter and by-laws of the corporation required a full and explicit statement of the business of the corporation to be annually submitted to stockholders at the annual meeting, which had been done to the satisfaction of all parties in interest within a few weeks before the alleged first demand for inspection was made.

He averred that it was not true that even after judgment he did not permit the inspection of the books until a rule for contempt was taken and was threatened with imprisonment, but averred the fact in that regard to be that he, respondent, did exhibit to the plaintiff any and all regular books of the corporation, including the stock ledger, wherein were recorded the purchases and transfers of stocks, the names of the stockholders and the number of shares owned by each. That upon legal advice he believed that the opening of these and all other books was a full compliance with the judgment that had become final, and the rule for contempt was in fact an arrangement between counsel to have a judicial interpretation on the question whether or not under the judgment and the demand on which it had been based the plaintiff herein had a right to demand information of and inspection of what is called a mere book of "memorandum" of transfers of stock made or to be made during the hours of a given day; respondent being advised that such memorandum, which, before the close of the day, were regularly entered in the regular books, could be seen on the following

day, was not one of the books of the corporation, to the inspection of which the plaintiff herein was entitled, even under the judgment.

·Respondent averred, however, that he acted in good faith, and specially denied that the plaintiff had suffered any damage from any cause for which he, respondent, was liable.

The District Court rendered judgment in favor of the plaintiff against the defendant for the sum of two thousand three hundred dollars and interest and costs, and the defendant appealed. Plaintiff prayed in the Supreme Court that the judgment be increased to at least $3,116.

## OPINION.

The decision of this court in State *ex rel.* Bourdette (49 Ann. 1556) has definitely settled that the plaintiff was in February and March, 1897, a stockholder in the NewOrleans Gas Light Company; that as such he had the legal right to inspect the books of the corporation in aid of a real and actual interest upon which would be predicated the request to inspect the same, and that the company had illegally denied him this right. In that suit, which was a mandamus proceeding to compel the present defendant (then the President of the Gas Light Company) and the Secretary of the company to permit such inspection, the mandamus was made peremptory. There was a very considerable delay before the relator was able to make the inspection.

He subsequently instituted an action against Sieward individually to recover from him the sum of fifty-eight hundred dollars alleged to have been suffered by him by reason of his inability to make such inspection. An exception of no cause of action was sustained by the District Court, but on appeal the judgment of the District Court was reversed and the cause remanded for further proceedings (52 Ann. 1333). The case was tried upon its merits and judgment was rendered in favor of the plaintiff for twenty-eight hundred dollars. The defendant appealed, and it is this judgment which we are called on to consider.

There is no doubt that our previous decision having determined that the plaintiff had been deprived of a legal right, plaintiff is entitled to recover damages against the defendant to some extent. We have held that the violation by a person of the legal rights of another renders the latter liable for at least nominal damages, without proof of actual

damage. (Dudley vs. Tilton. 14 Ann. 283; Powers vs. Florence, 7 Ann. 234; Bourdette vs. Sieward, 52 Ann. 1333.)

The question before us is whether the plaintiff is entitled to recover from the defendant the particular damages which he claims. The only decision in our State called to our attention by the plaintiff is that of Bayne vs. The Union Bank, 9 Rob. 433.

In that case the plaintiff had become the actual owner of a number of shares of the Union Bank by purchase from the Citizens' Bank, and was entitled to have the same transferred to him on the books of the bank, in order to make his ownership available. The bank, without any rights upon or in respect to the stock, refused to make the transfer, the result being that the plaintiff was unable to control his property until some time afterwards, when the stock had become depreciated in value. When he got control of the stock, he sold the same at it's market value, and under the judgment of this court recovered the amount of the depreciation in the value of the stock as damages from the bank.

In the case at bar the plaintiff does not claim that the defendant was in control of the ownership of his stock; it was in his own possession all the time, subject to his free power of disposal. What he claims is that by reason of the refusal of the plaintiff to allow him to inspect the books of the corporation his judgment had been affected as to whether he should dispose of his stock or not and at what times he should dispose of it, if he deemed it to his interest to do so. His claim is that, had he had inspection of the books, he would have ascertained that the defendant, Sieward, President of the corporation, had recently sold out a large number of shares of the company which he owned; that the Mechanics and Traders Insurance Company, of which Col. Macon (who was a director of the Gas Light Company) was an officer, had also parted with a large block of stock of the Gas Company. That, had he known these facts, he also would have sold out his stock, but, not knowing these facts, he had not only not sold, but had, on the contrary, purchased other stock.

It is not pretended that any inspection of the books of the corporation would have disclosed any action on the part of the officers of the corporation in their management and conduct of its affairs which had caused injury to its business, or any fact which, had it been known by him, would have induced action on his part as a stockholder between himself and the corporation or its officers. Neither the President nor

the board of directors are charged with misconduct in the management of the affairs of the corporation. The plaintiff complains simply of the effect which he says the action of the defendant in selling out some of his shares of stock would have had upon his dealings as between himself and the general public in respect to holding or selling his own stock.

The act of the defendant in selling out his stock was not an official, but an individual act, which the plaintiff had no legal right to question or control. Plaintiff maintains, however, that he was entitled to know the fact itself, so that he could guide his conduct and his judgment as to disposing or of holding on to his stock by what the defendant had done with his own. He insists that had he known that the defendant had sold any of his stock, he would have sold his own at once. What he would have done in the premises rests entirely upon his own testimony to that effect. It so happens in this particular instance that at the date of the demand made by plaintiff to inspect the books and the refusal of the defendant to grant the request, the stock was falling on the market, but this was for reasons entirely independent of the selling out of stock, either by the defendant, or any one else

The depreciation was due to causes of which the public were very well advised, which had no connection with defendant's sale of his stock, and which it did not require an inspection of the books to know. The stock, after falling, reacted on the market; went for a short time higher than it stood on the day of the refusal of the inspection, but fell again and has remained down.

The evidence shows that the sale by the defendant of his stock was not due to consideration by him of gain or loss in its value, to possible or probable rise or fall, but in order to enable him to pay debts of his own which he had to meet. He did not sell all of his stock, but retained such of it as he did not need. The sale of stock by the Mechanics and Traders Insurance Company had extended over a year's time, and there is nothing to show that it was based upon any inside knowledge of conditions which were calculated to bring about a fall.

It so happens that, had the plaintiff in this case made the action of the defendant and that of the Mechanics and Traders Insurance Company in selling out their stock a test by which he would be guided as to what he should do with his own stock, and he had sold out on the day that the inspection was sought and denied, he would not—as a

matter of accident, viewing the whole situation afterwards from that day to this—have met with the loss he did, but there was a short period at which he would have gained by not selling, and it might well have been that, following blindly in the wake of the defendant's action, he might have suffered material loss.

The stock of a corporation has two values, the actual value which an ascertainment of its affairs would show, and a market value, frequently dependent on any given day upon causes entirely independent of the business management and the actual condition of the corporation. We do not think that for the denial of the officer in charge of the books of a corporation, to permit a stockholder to inspect the same on a given day, he should be held liable to that stockholder for the subsequent falling in value of his stock from collateral cause not due to something which an inspection of the business affairs of the corporation, through the books, would have disclosed, nor do we think that he should be held liable for depreciation of stock from causes of which the general public were advised without the necessity of an inspection of the books.

We have no reason to suppose that the defendant in this case was chargeable with bad faith in his course. He doubtless did what he conceived to be his right and his duty in the premises. We may say here that there is no evidence in the record to show that as an officer of the corporation he had absolute control of the books; his action may well have been controlled by and subordinate to the will of the board of directors.

From a consideration of the whole case, we are of the opinion that the judgment should not stand. The damages claimed are remote, collateral and speculative, and, besides this, are not supported by sufficient evidence.

For reasons assigned herein, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby amended by reducing the amount thereof to five hundred dollars, and as so amended it is hereby affirmed at costs of appellee.

BLANCHARD, J., dissents, holding that, even if plaintiff be only entitled to recover damages for deprivation of a legal right, the amount allowed is inadequate, considering his large holdings of stock in the Gas Light Company at the time, and the extent and magnitude of the transactions in the shares of that company upon the stock market.

PROVOSTY J., concurs with BLANCHARD, J.