————o————

## No. 3960.

### (Court of Appeal, Parish of Orleans.)

## MAURICE BREANT vs. FRANCOIS CAZELLES.

1. If one of the parties to a contract makes performance impossible, he may not take advantage of the non-performance, but the other is released and may have his action for the breach.
2. In such case, an employe's right to recover his salary for the unexpired term accrues at the moment of the employer's act which makes performance impossible, and becomes a vested right, which cannot be affected by the employe's subsequently engaging his services to another.
3. Where there is an acknowledged inability on the part of the defendant to execute the contract the putting in default is not necessary as a prerequisite to a suit for damages for a violation of the contract.
4. A putting in default under such circumstances would be a vain, idle and useless ceremony.
5. Remote and conjectural damages will not here be allowed; the measure of recovery must be restricted to such damages as appear to have been in the contemplation of the parties to the contract.

Appeal from Civil District Court, Division "B."

Henry Denis, for Plaintiff and Appellee.

Clegg & Quintero, for Defendant and Plaintiff in reconvention, Appellant.

DUFOUR, J. The plaintiff sues to recover an amount al-

333

leged to be due under a contract for services as dramatic artists of himself and wife, for the cost of their return to France, and further for damages for mental anxiety to the extent of $1000.

The defense sets up that the plaintiff was not discharged, but left of his own accord, and that he violated his contract by giving entertainments without defendant's consent, and a reconventional demand is filed for the stipulated penalties alleged to amount to the sum of $1700.

By written agreement made in Paris, Cazelles engaged Breant and this wife as dramatic artists to perform in the French Opera of New Orleans or any other American theatre that might be managed by Cazelles, with the troupe he had secured.

The engagement was to last from October 19th, 1904, to March 12th, 1905, and the salary of both artists was fixed at the sum of $340, per month. Breant and his wife came to this city, and, with the rest of the troupe, entered into the performance of their contract. About January 16th, 1905, Cazelles, finding that he had been losing considerably and to avoid further loss, decided to close his theatre on January 22nd.

He called the members of the troupe together, explained the situation to them, and they all agreed with the exception of plaintiff and his wife, to cancel their engagement in consideration of payment of their salary up to that date and of the amount necessary to pay their return passage to France. Cazelles also allowed them free use of the Opera House for performances to be given by them, for their own benefit and on their own account, from January 22nd to January 30th.

These performances were given, but Breant and his wife refused to participate therein; immediately thereafter the troupe disbanded, and all of its members returned to France except Mr. and Mrs. Breant, who remained in this city.

We do not find that the plaintiff has, at any time, violated his agreement or voluntarily abandoned his employment.

There is nothing sacremental as to the form of a discharge.

"If one of the parties to a contract makes performance impossible, he may not take advantage of the non-performance,

334

but the other party is released and may have his action for the breach."

7 E. Am. Encyc. Law, p. 149 (2d ed.).

Cazelle's dissolution of the troupe and abandonment of his theatrical venture made it impossible for him to comply with his contract and was equivalent to a discharge.

116 La. 90.

. Madden vs. Jacobs, 52 An. 2107, does not militate against this view. The question there presented was whether the destruction by fire of the business house and stock of goods of the defendant, released them from their obligation to retain, the plaintiff in their employment, at the salary stipulated for the rest of the year. The Court said:

"The dissolution and going out of business by the firm was not necessarily the result of the burning of the house and stock of goods. . . . . . Another house is generally easy to secure and other goods may be had by means of money and credit."

In this case, it is clear that Cazelles could not and did not intend to obtain another French dramatic troupe.

It is urged that plaintiff made no tender of his services; this was not necessary.

In the face of an acknowledged inability on the part of the defendant to execute his contract, a putting in default would be a vain thing and a useless ceremony. Under the circumstances, it is not necessary as a prerequisite to a suit for damages for a violation of the contract.

39 An. 587, 47 An. 1232.

Breant's refusal to perform with the company at the extra performances is without significance; he was under no obligation to do so, as Cazelles made no transfer of his contract to the artists, but merely allowed them the free use of the Opera House.

It is further urged that Breant violated his contract by giving lectures and also that he obtained employment at the French consul's office; these matters arose after the contract had been abrogated by Cazelle's conduct.

From that moment Breant's rights became vested, and he was at liberty to act as he pleased without reference to his former employment. 115 La. 39.

The claim that Breant made no demand for his salary, even

335

if well founded, cannot affect his right of action and could not have any effect except to cast the costs on plaintiff, if the want of amicable demand was seasonably pleaded.

The testimony does not satisfy us that Breant did not intend to return to France; he was without resources and was compelled to remain here and make an effort to earn a living; he explains sending for his furniture "because I (he) being at the French Consul I found it was cheap to bring my furniture here and I did so."

His present intentions and acts are not relevant; his rights were fixed at the time of the suit.

The district judge correctly allowed plaintiff the balance of salary and the cost of the return trip to France; he properly rejected the other damages claimed as remote, conjectural and not within the contemplation of the parties. 107 La. 258, 114 La. 743.

Judgment affirmed.

March 25th, 1907.

### DISSENTING OPINION.

MOORE, J. Plaintiff seeks by his action to enforce the penalty of forfeiture imposed by Art. 2749 C. C. on the matter, who, without any serious grounds of complaint, sends away a laborer whose services he has hired for a certain time, before that time has expired.

This provision of law is penal in its character and is, therefore, to be strictly construed.

In order that the plaintiff may be entitled to enforce the penalty which is forfeiture by the employer—the defendant—of the whole salary which the plaintiff would have been entitled to receive had the full term of his services arrived, the plaintiff must establish, first, that he was hired for a certain time; second, that he was sent away by his employer before that time had expired, and, third, that he was sent away without any serious ground of complaint.

The hiring for a certain time is not disputed. Was the plaintiff "sent away" by his employer? Let the plaintiff answer the question himself. When testifying as a witness in

his cause he was asked: "Did Mr. Cazelles (the defendant) ever discharge you?" To which he replied: "No." He is corroborated by the defendant—the two being the only witnesses who testified in the cause—who was asked: "Mr. Cazelles, have you ever discharged Mr. Breaut?" To this he replied: "Never!" How, when and in what manner can it be said that he was "sent away?"

On the 22nd January, 1905, the defendant transferred his enterprise to his troupe who continued giving performances until the 30th day of January, when the French Opera House was finally closed. Plaintiff's contract with defendant, however, did not terminate until March 12th, 1905. Upon being advised that the enterprise had been transferred to the troupe and that the season would finally close on the 30th January, the plaintiff abandoned all further intercourse with the troupe and with the defendant. He refused to perform with the former, made no demands on the latter for his weekly salaries and at once set out to obtain other employment, after the 23rd of January, which he obtained, his theory being that because the plaintiff had abandoned the enterprise this was tantamont to a discharge without just cause.

I do not understand the law to be that simply going out of business, or abandoning the business in which the employer is engaged and in the service of which the laborer is employed, is equivalent to a discharge, and that the laborer may at once seek other employment and then exact the penalty of his employer on the ground that he was discharged before the expiration of his time of service. Madden vs. Jacobs 52 A. 2107.

In the Court's opinion: "Breaut's refusal to perform with the company at the extra performances is without significance, he was under no obligation to do so as Cazelles made no transfer of his contract to the artists but merely allowed them the free use of the Opera oHuse."

Let us see what the proof on this point is. The plaintiff was asked this question: "Do you know, Mr. Breaut, that Mr. Cazelles, after the 22nd of January, transferred the theatre and his entire company to the artists society—to the Combined Artists?" To which he replied: "Yes, sir; I know that very well."

Cazelles, interrogated as a witness, was asked: "Have you

337

made with any one a transfer of your rights under the contract?" To which he replied: "Why, certainly, I transferred it to the artists so they could make this extra week."

Surely it cannot be said in the face of this that Cazelles "made no transfer of his contract to the artists."

And in view of the fact that the contract in the instant case stipulated that:

"Si le directeur venart a ceder son entreprise, l'artiste soussigne s' engage a tenir son engagement envers le concession naire," the "significance" of his refusal to perform is nothing more nor less than a breach of his contract. For these reasons I dissent from the opinion and decree.

May 6, 1907.

Rehearing refused May 6, 1907.

Writ refused by Supreme Court May 29, 1907.