## No. 9524.

Henry M. Payne vs. Morgan's Louisiana and Texas Railroad and Steamship Company.

An amended petition which purports to supply omissions in general allegations contained in the original petition, and to correct clerical errors in other allegations, and which concludes with a prayer for the same amount of money, based on the same cause of action, does not alter the substance of the demand, and is therefore admissible.

Touching the corresponding rights and duties of railroad companies in constructing their works, the rule of law requires that a railroad company, in enforcing its right of way over the lands of others and in constructing its road, should leave the adjoining lands and

Payne vs. Railroad and Steamship Company.

fields which it crosses, in the same condition as regards the facilities of cultivation and as concerns the utility of those lands to their owners as they were before the entry of the company.

Hence a railroad company which constructs an embankment on the lands of a planter, and thereby stops up his ditches and other artificial drains, is responsible to such owner for all losses of crops and other damages occasioned by such interruption of his drainage.

APPEAL from the Civil District Court for the Parish of Orleans. Houston, J.

*Henry C. Miller* and *Branch K. Miller* for Plaintiff and Appellee.

*H. J. & G. J. Leovy, J. P. Blair* and *E. B. Kruttschnitt* for Defendant and Appellant.

The opinion of the Court was delivered by

Poché, J.  Plaintiff's demand is for the sum of $12,800 as damages for the loss of a crop of sugar cane and stubble, and for amount of labor used thereon, occasioned by the act of the defendant, while constructing its railroad bed across his plantation, in doing which the company stopped the ditches and other drains necessary to the proper cultivation of his aforesaid crop, which had been put in the ground in the fall of 1881, for harvest during the following season.

The defense is a general denial, and this appeal is taken by the company from a judgment of $6020 in favor of plaintiff.

A preliminary question grows out of a supplemental or amended petition filed by plaintiff with leave of court.

In his original petition plaintiff, basing his main cause of action on the alleged illegal act of the defendant in interrupting his drainage, had subdivided his demand in three elements of damages, loss of a crop of sugar and molasses for the year 1882, loss of stubble cane for the years 1883 and 1884, and loss of labor expenses necessary to plant eighty acres of land in sugar cane, for all of which he claimed the aggregate sum of $12,800.

In that petition, as he alleged subsequently, he had erred in the statement of the value of the lost crop, and of the value of the stubble cane—and in omitting to specify the amount expended for labor on the same.

The purport of his amended petition was to supply the omission and to correct the errors, the prayer being for the identical sum of $12,800 on the identical cause of action.

The objection that the supplemental petition alters the substance of the demand, and the plea of prescription of one year in bar of items not included in the original petition, have therefore the appearance of

being strained and very far sought; hence they fall under their own weight. The supplemental petition merely amplified the allegations contained in the original petition, but it added no new cause of action; hence it was properly received. C. P. 419.

Defendant's contention seems to be that an amended petition is admissible only in so far as it amends nothing.

A proper investigation of the case presents two questions:

1st. Whether the defendant is legally responsible for the loss of plaintiff's crop.

2d. If so, what is the amount of the loss to be accounted for?

1. The record is very voluminous and the testimony is conflicting, but after a careful analysis of the same, we find the following facts to be established by the record:

The Barbreck plantation involved herein is situated on both sides of Bayou Bœuf in the parish of St. Landry, and the crop in discussion had been planted on that part of the plantation which lies on the east bank of the bayou. The fall of the land there is from the bayou towards the low lands or swamp in an eastern direction. Hence the drainage of that part of the plantation was operated by means of a large number of ditches of various sizes, some twenty-six in number, beginning near the bayou, and ending mostly in the low lands on the eastern limit of the plantation.

There was in addition a large canal, which begun in the northern limit of that field, and crossing it diagonally, emptied into the Bayou Bœuf, at a bend formed by that stream in the southern extremity of that part of the place. The defendant's road bed crosses the plantation from south to north, almost parallel with the bayou, and intersects the twenty-six ditches referred to at right angles or nearly so. It crosses the main ditch known as the "Graveyard canal," in a diagonal line.

In throwing up the embankment, which is several feet above the level of the soil, the contractors of the defendant company closed up nineteen of the plantation ditches, and in leaving openings for the eight others, thus placed defective and insufficient culverts or boxes, in consequence of which the waters accumulating from frequent and heavy rains in the ensuing winter, being thus without draining facilities, stagnated on the planted lands between the bayou and the embankment, rotted and destroyed the cane therein planted.

It is shown to our entire satisfaction that the land had been carefully and skilfully prepared for planting purposes; that the seed cane used was good and sound, and that the planting had been skilfully done,

NEW ORLEANS, MARCH, 1886.

Payne vs Railroad and Steamship Company.

neither too shallow nor too deep; that the soil was fertile and had heretofore always produced good crops, and that under ordinary circumstances, plaintiff would have realized a handsome crop from that field.

The drainage of the plantation had been intelligently conceived and thoroughly executed, and presents as complete a system of drainage as could be found any where in the State. Previous to the construction of the defendant's embankment, the crops cultivated in that field had never lingered or suffered from the action of rain water, which had always been regularly and safely carried off by means of the efficient drainage which we have described.

Throughout the summer and during the fall and winter of 1881, while the embankment was being constructed, and after its completion, plaintiff in person and through his agents made numerous protests against the invasion of his private rights by the wanton stoppage of his drains, but he could obtain no redress, and a suit in damages was his only alternative.

The crop planted in that field was an entire failure, only five or six acres of scattered cane grew up in the field, representing little or no value to the despoiled planter. And in the face of such a showing the defendant resorts to the very aggressive argument that plaintiff was not a careful or skillful planter; that his cane had been planted too deep, and that his drainage, which was hitherto deficient, had been substantially improved by the company's system. That system involves the proposition that more water will pass, and will run more rapidly through eight ditches or canals than through twenty-seven, and that an opening of five feet is sufficient to freely pass the water which fills a canal fifteen feet wide and seven feet deep.

The argument might be considered sarcastic if it had the slightest reason either in fact or in experience for its support. But it can make no impression on the judicial mind, which must trace proven effects to rational causes.

No argument can be invoked to show that a railroad company, in entering the lands of another for the purpose of building its road-bed, can legally alter the system of drainage adopted by the owner, or dictate to the latter the mode of cultivation which he must follow.

Under our jurisprudence, which has been in accord with the adjudications of the Supreme Courts of the leading States of the Union, the corresponding rights and duties of railroad companies, in making the works necessary for the construction of their roads on lands legally expropriated therefor, are clearly defined.

" The rule of law requires of a railroad company, in enforcing its right of way over the lands of others and in constructing its road, to leave the adjoining lands and fields which it crosses in the same condition as regards the facilities of cultivation and as concerns the utility of those lands to their owners, as they were before the entry of the company." Bourdier & Bellieinn vs. Morgan's R. R. Co., 35 Ann. 947 ; V., S. & Pacific R. R. Co. vs. Dillard, 35 Ann. 1045 ; Railway Company vs. Murrell, 36 Ann. 346.

This plain rule which finds its sanction in common sense as well as in justice, and which imports the reasonable exercise of all rights of property, was not heeded by the defendant company, which left plaintiff's field practically stripped of its indispensable drainage, thus destroying its utility for cultivation to the owner.

We are not now concerned with the works and other improvements subsequently made by the railroad company on plainniff's lands as regards his drainage. Defendant's responsibility must be tested under the condition, as shown by the evidence, in which it left plaintiff's lands in the summer of 1881, and in which the field remained throughout the ensuing winter, at least to the middle of January.

Our conclusion is that he lost his eighty acres of cane through the stoppage of his draining canals and ditches by the contractors and other agents of the defendant company, and that for such losses the corporation is plainly, justly and legally responsible.

2. The evidence is equally conflicting on the question of the amount of losses sustained by plaintiff in consequence of the destruction of his crop.

But, in comparing the crop realized by Payne on other portions of his plantation, not similarly affected by the railroad embankment, with the testimony of numerous experts as to the probable yield of the eighty acres of cane, we have become satisfied that the amount allowed by the district judge is not excessive but, if anything, under the amount which could have been legally allowed.

From the preponderance of the testimony, we are satisfied that the area of the field under discussion, is eighty acres, and not seventy-four and a fraction as contended for by the defendant. We must be guided by the testimony of the owner, of his overseer and other employees, and of other parties who are familiar with the ground, and who swear that eighty acres of cane had been planted therein.

The weight of evidence shows that the expenses for labor in preparing the lands and planting the cane, were reasonably worth $10 an acre which makes up $800.

From the record it appears that the year 1882 was unusually fertile in cane—and hence the testimony satisfies us that a profit of $40 per acre was a very reasonably expectation for plaintiff out of the eighty acres of cane in question, which makes up the sum of $3,200 on that score; we are also satisfied that, for the lost value of the first year stubble, the sum of $2,400 would be a very reasonable allowance, as it is the lowest estimate of the same by the experts; and it appears that these three amounts are in excess in the aggregate of the amount allowed in the judgment of the lower court.

We are not informed by the district judge of the nature of the details which make up the amount which he allowed; the aggregate of ours would be slightly in excess of his; but no motion was made for an increase, hence we have no authority to disturb his finding.

Judgment affirmed.

Mr. Justice Fenner recuses himself on the ground of affinity.