SUMMERVILLE, J.
This is a suit for damages growing out of a collision between an automobile owned and driven by plaintiff and an automobile truck owned by defendant, and operated by one of its employes. As a result of the accident, plaintiff’s automobile was seriously damaged, and plaintiff was painfully bruised and bis ankle and wrist were sprained. None of plaintiff’s bones were broken, and be sustained no permanent injury, although ten months after the accident his wrist was not entirely recovered at the time of the trial.
The case was tried before a jury, and resulted in a verdict for plaintiff in the sum of $1,500. From this verdict and the judgment thereon, defendant has appealed.
“Defendant seeks by this appeal merely to reduce the amount of the verdict and judgment, the error complained of being that the award of the jury in view of the evidence adduced is excessive.
“The weight of evidence in this case supports plaintiff’s contention that the driver of defendant’s truck was at fault; but, conceding this, we respectfully submit that the evidence does not warrant a recovery by plaintiff of $1,500.
“Plaintiff bases his claim for damages on two grounds: First, the personal injuries which he sustained; and, second, the damage done to his automobile.” (Quoting from defendant’s brief.)
Plaintiff testified as to the injuries to himself as follows:
“I had a sprained wrist, a sprained ankle, and contusion of the hip, and laceration — superficial laceration — on my arm and on my leg, and small cuts from the glass and wind shield, on my head and hands. Q. You say that you were kept in bed two, weeks, and then wore a bandage on your wrist for ten days after that? A. Yes, sir. Q. And after that period, was your wrist entirely recovered? A. Well, my wrist is not entirely recovered as yet. Occasionally, in cloudy weather, I feel my wrist and ankle, both. Q. Are you required to use that wrist in your professional work? A. Very often. Q. Does the pain in your wrist affect its usefulness in your work? A. Well, I don’t attempt lots of work now that I would have done, or would do, if it did not disturb me. If I strain it the least bit too much, I feel pain in it.”
As to the damages to the automobile, plaintiff says:
“There was hardly any part of it that did not have some damage, from the front to the rear. The top was totally demolished. The radiator in front, both lamps, cowl, gasoline tank and cowl, running boards, fenders, and the whole chassis was twisted, which would necessitate practically being rebuilt, for it to be safe. Q. Now, what was the matter? You say that both lamps and radiator and cowl, and gas tank and cowl, and running boards, but you don’t say just what was the matter with them? A. Well, the gas lamps were all bent up and the crystals in them broken, and the globes were broken, and you could not use them at all any more. The radiator, the top of it was knocked off and bent in — you practically had to have a new radiator, if the machine were to be rebuilt. The fenders were all bent up, and a portion of them torn — torn from the car, too. The only portions of the car that did not have any injuries -were the four wheels, and they tvere up on top of the car, when the car stopped. Q. What was the damage to the gas tank? A. It must have had a leak. There was not any gasoline in it when it came in. It was under the cowl, and it must have been mashed, the same as the cowl was mashed. Q. What was the matter with the chassis? A. All twisted. Q. Where is the machine now? A. It is up in my back yard. I had it removed to the garage, and they wanted storage for it, so I thought, well, since they are going to charge storage on it, I might as well store it in the yard, as store it down there. Q. It has never been repaired ? A. Nothing has ever been done to it.”
He is corroborated by the witness, Ralston, who said:
“The car was pretty well deritolished. The four wheels were standing straight up in the air, and that was all that seemed to me to be intact.”
The automobile was almost a new car, for which plaintiff had paid $1,332; and it was virtually demolished and made into junk through the fault of defendant.
The jury has awarded plaintiff $1,500 damages, without division as to the amount for personal injuries and the amount for the automobile.
“The evidence * * * does not fix with certainty the damages which plaintiff is entitled to, but in suits upon tort the quantum of damages is left largely to the sound judgment and conscience of juries and trial judges.” Wood v. Monteleone, 118 La. 1005, 43 South. 657.
Affirmed.
O’NIELL, J., is of opinion the amount of the judgment is excessive.