## MURFF v. LOUISIANA HIGHWAY COMMISSION.*

### No. 4509.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1933.

· Murff & Perkins, of Shreveport, for appellant.

L. L. Morgan and A. S. Cain, Jr., both of New Orleans, and D. M. Ellison, of Baton Rouge, for appellee.

MILLS, Judge.

Plaintiff brings this suit to recover damages to the crops on 164 acres of land in Bossier parish, La., allegedly caused by the

---

*For opinion denying rehearing, see 146 So. 767.

action of the Louisiana Highway Commission in blocking the natural drainage outlets of this area with the embankment erected in remodeling and hard surfacing Highway No. 80, running from Shreveport to Minden. The land in question is typical bottom land located just north of Highway No. 80, about two miles east of Bossier City. The district is drained toward the south by many chutes, bayous, and canals flowing naturally across the highway. Before the remodeling of the road, this drainage was amply taken care of by a series of bridges and trestles. In rebuilding the road, shortly before the planting season of 1930, the petitioner alleges, the highway commission, by means of earthen embankments, reduced these openings by at least two-thirds; that about May 20, 1930, heavy rains severely taxed the capacity of the natural drainage, but the waters would have passed off without damage, had not the outlets been blocked and restricted by the road embankment, which caused the water to back up, overflow, and stand upon petitioner's land, destroying his crops and preventing replanting until after June 10th. That he had under cultivation 110 acres planted in cotton, corn, and alfalfa; that though he replanted and cultivated diligently, he made no corn, no alfalfa, and only 7 bales of cotton; that his average crop was 200 bushels of corn, $100 worth of alfalfa, and 24 bales of cotton. In 1930, because of special fertilization, he should have made 30 bales of cotton. He claims a total damage of $1,000.

Plaintiff shows further that unless adequate openings are placed through the highway, other overflows will occur. Therefore, in addition to the damage, he prays for an order directed to the Louisiana Highway Commission commanding it to enlarge the openings across Highway No. 80 sufficiently to take care of the drainage across it.

To this, defendant interposed an exception of no cause or right of action based on the proposition that the state cannot be sued without its consent and that it is not liable for the torts of its employees. The exceptions were sustained and the suit dismissed by the lower court, but on appeal to this court, the judgment was reversed, the exception overruled, and the case remanded for trial. The opinion on appeal, which fully reviews the law in the case, is found reported in the 19 La. App. 847, 140 So. 863. The case, duly tried upon the merits, resulted in a judgment for defendant, which is before us for review on appeal by plaintiff.

The legal questions having been disposed of, we are now concerned only with the facts. As to these, George E. Dutton, an engineer, testifies that he made two studies of the whole area of the high water of 1930, one for the planters of the district, and one for Judge Murff. His written report made in connection with the former is offered in evidence by defendant, while a most comprehensive map made for the plaintiff is offered by him. From these and from the testimony of Mr. Dutton, we learn that the land drained by the various streams and outlets passing under Highway No. 80, between Red river on the west, and the hills of Red Chute on the east, comprises an area of 825 square miles, or 528,000 acres. That according to Talbert's Drainage Table, 11,776 square feet of openings are required to carry off the water which drains naturally to the south between the river and the hills, a distance of about 6 miles.

Three lines of transportation, forming in effect dykes and levees, cross this bottom. The L. & A. above and to the north does not interfere with plaintiff's property. Highway No. 80 and the V., S. & P. run almost parallel east and west, a little to the south of and below it. From the east, for two-thirds of the distance, the highway is north of the railway. At a point just south of the east line of Judge Murff's property, the road turns sharply south across the railway, turns again to the west, running thence south of the railway to the river.

According to the tabulation of Mr. Dutton, in May, 1930, drainage openings through the highway totaled 3,637 square feet, 8,139 less than required. The railway had 9,570 square feet of opening, a deficiency of only 2,206 square feet. The natural outlets, if unobstructed by either road or railway, equaled 12,250 square feet, an excess of nearly 500 feet. Going into detail, Mr. Dutton shows that at point "A" on the map, two 8x8 culverts are expected to take the place of 512 square feet of natural outlet. At point "C," one 24-inch pipe is substituted for 410 square feet. At point "H," where the railroad immediately south has a bridge furnishing 1,800 square feet of opening, the highway bridge has a capacity of but 527 square feet. At point "D," two 5x5 culverts, with a total capacity of 50 square feet, take the place of a 576 square foot natural opening. This land being flat and level, a few feet of elevation make a great difference in the overflowed area. If the water could be kept under the 164 level, there would be no damaging overflow. During the flood of 1930, Dutton found at point "A" on the map that the water north of the highway stood at a level of 167.8. Just south of this and north of the railroad, the water only reached 164.3. This difference of 3.5 feet backed up by the highway, causing a general backing up and spreading of the water, was the apparent cause of the overflow and damage on the Murff land.

We have gone into the testimony of Mr. Dutton, supported as it is by facts, figures, and maps, in order that it may be compared with the inexact opinion

testimony of the highway engineers. Of these, L. T. Gilmer, an employee of the highway commission, graduated from Louisiana State University in 1928, was employed in remodeling the road. He testified that the flood of 1930 exceeded by about one foot any other in his recollection, and that in his opinion, Judge Murff's place would have been flooded in 1930, regardless of outlets. He offers no data, no figures, no map, as a basis for this opinion. He then offers an equally baseless opinion that the openings across route No. 80 are sufficient to carry off the waters of an ordinary flood. What he considers an ordinary flood, we do not know. His statement that in this flat, level country, the stopping up of all the openings through the road east of Judge Murff's land would not affect the height of water on it, is so contrary to common knowledge and experience that water will spread over a flat surface, that we are forced to conclude that but little weight can be given to his testimony.

N. E. Lant, another highway commission engineer, who worked on the job, says that the openings left under Highway 80 were sufficient to carry off the water under conditions existing *at the time it was built*, which, of course, aids us not at all, as the road obviously was not constructed under flood conditions. This witness testifies that the entire drainage area was studied and that by ordinary methods it was computed that 4,000 feet of openings would be equivalent to the cross section of the bayous traversed, and that openings in excess of this would be surplus and useless. Mr. Dutton's testimony is that the capacity of the natural openings is 12,250 square feet, and that openings through the highway totaled but 3,637 square feet. Mr. Dutton illustrates this discrepancy with actual measurements at specific points, which are grotesquely incompatible with Mr. Lant's testimony, but which Mr. Lant does not contradict or refer to. We are not favored with any map or figures, nor are we informed how large the area is that he figured could be drained by 4,000 feet of openings. In view of the fact that engineering is an exact science, we think that the testimony of its disciples should consist of more than unsupported opinions.

In an almost identical case, where the defendant railroad, which had blocked and reduced the drainage of plaintiff's land, attempted to prove that " * * * more water will pass, and will run more rapidly through eight ditches or canals than through 27, and that an opening of five feet is sufficient to freely pass the water which fills a canal 15 feet wide and 7 feet deep," the court said: "The argument might be considered sarcastic if it had the slightest reason either in fact or in experience for its support. But it can make no impression on the judicial mind which must trace proven effects to rational causes." Payne v. Morgan's La. & Tex. Ry. & S. S. Co., 38 La. Ann. 164, 58 Am. Rep. 174.

Lay witnesses offered by defendant, J. B. Lee and John L. Young, testify that both sides of the road east of Judge Murff's place were overflowed in 1930. Young says that it was about 6 inches higher north of the road. They both say that this water passed off of both sides about the same time, though Young first said it drained off the lower side first.

R. A. Grounds, for plaintiff, has known the land in the vicinity of the Murff place since 1882. He has owned a farm just east of the land in question since 1916. He says that, though the bayous got full, the land itself did not overflow, with the exception of 1922 in which year a planter placed a dam across Cross bayou, which caused the water to back up and overflow, until it was blown out with dynamite.

Judge Murff himself testified that he has known this land for forty years. That prior to 1930, his place had only been under water twice (in 1892, when the levee broke, and in 1922, when the dam was built and blown out); that the V. S. & P. has been built a number of years and has never caused his place to overflow; that since this road was rebuilt and the openings curtailed, he has been flooded twice (in 1930 and again in 1931); that in his opinion it will continue to overflow until the original openings are restored; that in 1930, the land south of the road did not overflow; that in 1930, he went carefully over his place in a skiff in an effort to learn the cause of the flood and the source of the water on his land; that the water was coming from the east, due to its backing up between his place and Red Chute; that after the flood in 1930, the railroad opened its drainage, but the highway commission refused to do so; and that the 1931 flood is proof that the blocking of the outlets by the road is the cause, and not the railway nor the unusual high water in 1930.

■ We conclude then that the plaintiff has established with reasonable certainty that the overflow of his land was due to the blocking and reducing of the drainage outlets by the remodeling of Highway No. 80 by the Louisiana Highway Commission.

■■ The measure of damages where growing crops are destroyed is stated in 17 Corpus Juris, 887, § 190, to be its value at the time and place of destruction. Where the crop is merely damaged, the measure is the difference between the value of the crops before and after the injury at the time and place thereof, with interest from the date of injury. To determine this value, numerous facts must be taken into consideration. Illustrative methods resorted to are: A year's rental value, with the cost of planting and cultivation up to the time of loss; what the crop would bring in its immature state at

a sale; the proof of the average yield and the market value of crops of the same kind planted and cared for in the same way, less the cost of maturing, harvesting, and marketing.

We find the above general rule approved by our Supreme Court in the case of Boudreaux v. Thibodeaux, 149 La. 400, 89 So. 250, which holds that prospective profits on growing crops are too uncertain to serve as the basis of judgment. That the correct rule is: "The measure of damages where a growing crop is destroyed through the tort of another person is the value of the crop at the time it is destroyed, not the value it might have had if suffered to mature and be gathered."

In Williams v. Windham, 3 La. App. 127, full value was allowed for a crop which had advanced to a point where but little, if any, cultivation was needed to mature it.

The objection to any proof of damage by plaintiff in the present case, on the ground that it was alleged in globo without detail or itemization, was correctly overruled, as this fault in the pleading should have been corrected by an exception of vagueness or motion for a bill of particulars.

Plaintiff had five or six acres in alfalfa, producing four or five tons, worth $20 to $25 per ton. At the time of the overflow, the crop was matured and ready to cut. It was completely ruined.

The corn was shoulder high and practically matured. The average crop on the acreage planted was about 200 bushels, worth from $1 to $1.10 per bushel.

The cotton was small, just ready for chopping out. Not all of it was killed. Most of the cotton land was replanted. Plaintiff made seven bales, worth $45 per bale, where his average crop is twenty-four bales.

To recover damages, plaintiff must make his claim certain. Where it is only made probable, a nonsuit is the proper judgment. Smith v. Thielen, 17 La. Ann. 239.

But where substantial damage is proven, recovery should not be denied because it is not capable of specific proof. In such cases considerable latitude is allowed the court in its sound discretion. Pettit v. Nelson Co., 141 La. 70, 74 So. 634; Germann v. 557 Tire Co., 167 La. 578, 120 So. 13.

Applying these rules, we think plaintiff is entitled to recover $100 for the alfalfa crop and $200 for the corn.

As to the cotton, the only value proven is that of the matured crop. There is a failure to prove the cost of maturing, harvesting, and marketing. We can only nonsuit this claim.

Plaintiff prays for an order commanding defendant "to put in large and adequate culverts to take off said waters, which should be at least three or more times as large as they now are."

We do not think this proceeding is in such form that a mandatory injunction, as prayed for can issue. Nor is the proof, while sufficient, as we have found, to sustain a claim for damages, definite or detailed enough to form the basis for such an order. However, we think that whatever rights plaintiff may have to such relief, in a proper proceeding supported by proper evidence, should be preserved.

The judgment of the lower court is accordingly reversed, and judgment is now rendered in favor of plaintiff and against defendant for $300, with legal interest thereon from judicial demand until paid; plaintiff's claim for damage to the cotton crop and prayer for an order directing defendant to open up the drainage openings on Highway No. 80 is dismissed as of nonsuit; defendant to pay all costs.