(107 So. 110)

No. 25295.

## SCHMIDT v. CITY OF NEW ORLEANS.

(Jan. 4, 1926. Rehearing Denied Feb. 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Eminent domain** ⬦⟹305 — **Expropriation; $500 damages increased to $1,000, where city took part of lot for railway purposes.**

    $500 would be increased to $1,000 as compensation for land taken, and damage to rest of lot, where railroad commission, as agency of city, took 12½ square feet from corner of city lot, by laying track thereon, without legally expropriating it, thereby reducing frontage, depriving owner of part of sidewalk, and increasing vibration from operation of trains.

2. **Eminent domain** ⬦⟹303 — **Expropriation; how damages assessed for taking of property in absence of specific figures stated.**

    Where corner of lot was taken by city without legally expropriating it, and in owner's action it appeared $340 would be required to repair fence and building, but evidence did not show what part of repairs was due to such taking, *held* court must assess damage as in case of offenses, quasi offenses, and quasi contracts, wherein, by express provision of Rev. Civ. Code, art. 1934, par. 3, cl. 2, it has much discretion.

Appeal from Civil District Court, Parish of Orleans; H. C. Cage, Judge.

Action by Mrs. Peter Schmidt against the City of New Orleans. From the judgment, plaintiff appeals. Amended and affirmed.

Francis Williams, Irwin F. Williams, and Bonomo & Dowling, all of New Orleans, for appellant.

W. McL. Fayssoux, of New Orleans, Sp. Counsel Public Belt Railroad Commission, for appellee city of New Orleans.

James Wilkinson and Harold A. Moise, both of New Orleans, for board of commissioners of port of New Orleans, called in warranty by defendant.

ST. PAUL, J. Plaintiff is the owner of a certain lot of ground in the city of New Orleans, with improvements thereon, measuring about 48 feet front on North Rampart between Kentucky and Manuel streets (St. Claude in the rear), by 126 feet in depth.

In November, 1918, the Public Belt Railroad Commission, functioning as an agency of the city government, and operating a belt railroad for account of said city, took and *appropriated*, for railroad track purposes, a certain triangular portion of ground off the east *front* corner of said lot, measuring 5 feet along the front and the same along the side, which said portion of ground has therefore about 12½ feet superficial area, and measures about 7 feet from the apex of the triangle at the corner of the lot to the base of the triangle, measured across the lot; thus bringing the line of said railroad track 7 feet nearer the improvements on said lot than the corner of said lot, beyond which the track *should* have been built, since neither said lot nor said triangle had been legally *expropriated*, but had merely been *taken and appropriated*, by the simple process of "bumping" its cars through plaintiff's fences, and laying its said tracks on plaintiff's property.

### I.

[1] The only question involved at this time is how much should defendant pay plaintiff as the value of the land taken, and as damages to the rest, and to the improvements thereon.

### II.

The superficial area of the whole lot was about 6,000 square feet, and the value of the *land* was about $1,200, or perhaps $1,500, say therefore between 20 and 25 cents per square foot; so that, on that basis, the 12½ square feet taken would have a value of about $3 or less. But it will be observed that this was taken off the *front* of the lot, thus reducing the frontage from 48 to only 43 feet; and one of the principal factors going to make up the value of a lot of ground in a large city is the extent of its *frontage* on a public street.

Again, the unlawful placing of the tracks 5 feet *nearer* the front of the residence situated on said lot than the corner of said lot had been required that the *curve* of the tracks should begin 5 feet further away from the corner of said lot, and thus take up 5 feet more of the sidewalk than had said track been placed beyond the corner of plaintiff's lot, where it should have been; and the convenience resulting from a clear and wide sidewalk in front of a lot of ground in a large city is another factor of importance in making up the value thereof. In the case before us, the effect of defendant's placing its tracks where it did place them, instead of where it should have placed them, has been to deprive one-half of plaintiff's double tenement residence almost entirely of any sidewalk whatever.

Plaintiff's lot has therefore been reduced in value far beyond the mere value of the land taken.

### III.

The placing of the tracks 7 feet nearer to the corner of plaintiff's residence than they should have been, or within one-half the distance which they would have been, had defendant kept its tracks off plaintiff's property as it should have done, necessarily increases very largely the *vibration* resulting from the operation of trains over said tracks to the manifest increase in the annoyance to which plaintiff and her tenants residing on said property have been and will be subjected. And the amount of the inconvenience and annoyance to which tenants may be subjected has a direct bearing on the rent they are willing to pay, and therefore on the value of the premises they occupy.

Besides which, the greater the *vibration* to which a building is subjected, the greater the amount required to keep it in repair; and the amount required to keep a building in constant repair has a direct bearing on the value of said building as it stands.

### IV.

[2] The cost of replacing plaintiff's fences is fixed at about $40; and it is shown that the cost of putting plaintiff's building in a fair state of repair would be about $300 additional. But the evidence fails to show to what extent the needed repairs are due to the illegal operation of defendant's trains over plaintiff's property, and to what extent to other causes. But that such operation of trains contributed to some considerable extent to the need for repairs cannot be doubted. But we cannot fix any amount even approximately.

### V.

We therefore find ourselves in the position of having to assess damages "as in cases of offenses, quasi offenses and quasi contracts," wherein "much discretion must be left to the judge or jury," R. C. C. art. 1934, par. 3, cl. 2.

The district judge allowed plaintiff about $500; but, after careful consideration of all the facts and surrounding circumstances, we have thought that this is not sufficient to recompense plaintiff for the damages she has suffered, and have concluded to increase the amount allowed to $1,000.

### Decree.

The judgment appealed from is therefore amended by increasing the amount allowed plaintiff to $1,000, and, as thus amended, the judgment is affirmed, at the cost of defendant in both courts.