ST. PAUL, J.
 

 Plaintiff is, and has been for many years, the owner of a brick building situated on St. Joseph street between Carondelet and Baronne streets in the city of New Orleans. Defendant is a dealer in automobile tires; and for the purpose of removing and replacing solid rubber truck tires uses a certain powerful hydraulic press operated by an electric motor.
 

 From January, 1923, to October, 1924, defendant occupied the premises next door to the building owned by plaintiff, and plaintiff claims that the operation of said press caused her building to vibrate, and damaged it to the extent of $5,000. She also claims $5,000 to her health, and a like sum for '“inconvenience, discomfort, mental anguish and worry,” due to the same cause.
 

 There is no evidence that plaintiff’s health has in the least degree been affected by the causes set forth. Nor do we find that plaintiff has suffered any inconvenience, discomfort, mental anguish or worry, -other than such as is usual and incidental when neighbors fall out and determine to thrash out their differences in a lawsuit. We will therefore confine our inquiry to the damages, if any, to plaintiff’s property.
 

 I.
 

 The clear preponderance of the evidence is that the press, though not operated continuously, was none the less operated regularly, that is to say, not less than several times a week and sometimes several times a day; that, when so operated, there was a constant vibration accompanied by severe shocks; that this vibration and these shocks jarred plaintiff’s building to an extent that objects fell from mantels, plaster fell from the walls, a staircase separated from the walls, and old cracks in these walls widened. It further shows that this vibration and these shocks were not necessary in the operation of the press, for it is shown that other machines of the same make were operated without them, and that this very machine, when removed to, and operated at, another location, was operated without perceptible vibration thereof. So that, at the time complained of, this machine was either set up improperly, or else improperly operated.
 

 And it is precisely in this that the cause now under consideration differs from Crump
 
 *581
 
 v. Carnahan, 155 La. 648, 99 So. 493, and Monlezun v. Jahncke Dry Docks, 163 La. 400, 111 So. SS6, wherein it was held, in effect, that a lawful business, conducted' in a locality where such business may be lawfully conducted, can never be a nuisance per se, and can only become such by reason of the manner in which it is conducted. But it is only
 
 “unavoidable”
 
 noise, smoke, vibration, etc., to which neighbors must submit for the public good. Le Blanc v. Orleans Ice Mfg. Co., 121 La. 249, 46 So. 226, 17 L. R. A. (N. S.) 287, citing Froelicher v. Oswald Ironworks, 111 La. 705, 35 So. 821, 64 L. R. A. 228, and Froelicher v. Southern Marine Works, 118 La. 1077, 43 So. 882. And whether or not any particular noise, smoke, or vibration, etc., be “unavoidable” in certain circumstances, presents of course only a question of fact. “But when it is established that a person is creating a nuisance, the mere fact that he is doing what is reasonable from his point of view constitutes no defense.” Orton v. Virginia Carolina Chemical Co., 142 La. 790, 77 So. 632, citing 29 Cyc. 1156.
 

 II.
 

 The evidence shows that it will cost about $3,000 to restore plaintiff’s property to good condition; and the trial judge awarded this amount against defendant.
 

 But the evidence satisfies us that the dilapidated and damaged condition of the building was due to four separate contributing causes, and not solely to the operation of defendant’s machine, to wit: (1) Natural wear and tear, the building being at least 50 and possibly 80 years old; (2) for more than 25 years, and up to a few years ago, the street in front of plaintiff’s property was occupied by the tracks of an interstate steam railroad over which long and heavy freight trains were constantly moved to and fro, with consequent severe vibration to the buildings fronting on said street; (3) some 20 years ago a system of deep subsoil drainage was put into operation in the city of New Orleans, thus lowering the water level and withdrawing the moisture from the soil, in consequence whereof the foundations of all buildings in the city settled more or less, and more or less unevenly, with consequent damage to walls and plastering everywhere; and (4) defendant’s machine operated as aforesaid in the adjoining building some 18 months or so.
 

 Cause No. 1, abovesaid, was a continuous one, hut slow in its effect. Causes Nos. 2 and 3 were arrested as to their effect when the railroad tracks were removed and when the water level of the soil had reached its ultimate point, all of which occurred some years before defendant began to operate its machine in the adjoining premises.
 

 It is therefore impossible to say exactly how much of said damages was caused by the operation of the press, since no survey of said building was made at the time the operation was begun. But it is none the less quite certain that some of said damage was caused thereby.
 

 But the bare fact that a plaintiff cannot establish exactly the amount of damages suffered by him and occasioned by the fault of the defendant will not suffice to discharge said defendant, when it is clear that plaintiff has in fact suffered some damages. Green v. Farmers’ Consolidated Dairy Co., 113 La. 869, 37 So. 858.
 

 Under such circumstances, the court must fix the quantum of such damages as best it can with the lights before it, and finds itself “in the position of having to assess damages ‘as in cases of offenses, quasi offenses and quasi contracts,’ wherein ‘much discretion must be left to the judge or jury.’ ” Schmidt v. City of New Orleans, 160 La. 281, 107 So. 110.
 

 And in this.case our conclusion, after careful consideration, is that the sum of $750
 
 *583
 
 is a fair allowance for defendant’s contribution to the damage to plaintiff’s property.
 

 Decree.
 

 Tbe judgment appealed from is therefore amended by reducing the amount allowed plaintiff against defendant to $750, with legal interest from judicial demand until paid, and all costs' of the court below; and as thus amended said judgment is affirmed, plaintiff to pay costs of appeal.