## NEWSOM v. STARNS et al.
### No. 870.

Court of Appeal of Louisiana.   First Circuit.
June 8, 1932.

Rownd & Warner and B. M. Harvard, all of Hammond, for appellant.

Amos L. Ponder, Carroll Buck, and W. B. Kemp, all of Amite, for appellee.

MOUTON, J.

The plaintiff, Dr. S. L. Newsom was tarred and feathered May 26, 1930, by Isaac G. Starns, Newton E. Starns, Henry Starns, Gordon Starns, and Charles Starns, five brothers.

This suit is brought by Dr. Newsom in damages for $20,000 against Isaac G., Newton and Henry Starns, in solido, for mental and physical torture; and not against Gordon and Charles Starns who are not sued.

The case was tried by a jury which rejected the demand.

Plaintiff appeals.

At about 10 o'clock p. m., plaintiff was in a restaurant in Hammond, with Campbell and Cuturier, taking a cup of coffee. While at the counter, Charles Starns told him that his brother, Gordon, had gone in his auto and had left him in Hammond. Plaintiff then offered Charles Starns to take him to his home where, it seems, plaintiff had taken him on several occasions. At the suggestion of Charles, plaintiff pulled his car in the driveway. Gordon, Charles' brother, pulled up behind plaintiff and blocked his way out. Isaac Starns, another brother, and one of the three defendants, came running to plaintiff's side of the car, and covered him with a gun, took a pair of handcuffs from his pocket, and with the assistance of Newton handcuffed him. A rope was tied to the handcuffs by which plaintiff was pulled out of his car causing pain by cutting off the circulation of blood, particularly

in his left hand, as plaintiff testifies. They then drove plaintiff to some lonely part of the woods where they removed the handcuffs. The five brothers were then present. Plaintiff was ordered to undress. He took his clothes off, coal tar was brought out, poured in a bucket, and was applied to plaintiff's body from head to foot with a brush. Feathers were taken out from a pillowcase which were put all over the coal tar with which plaintiff's body had been saturated. He was then allowed to put on his trousers and was put back in the car. He was then taken back to Hammond by the Starns brothers, and was put out in front of the Gem Café, an all night open restaurant. The testimony of the plaintiff is that when the coal tar was applied to his body with a brush it burned him severely.

After being thrown out from the car near the restaurant, plaintiff walked to his room, got in a bathtub, began removing the tar and feathers with soap and water as best he could.

He says, for seven or ten days thereafter he suffered pain from this tarring and feathering, particularly at night when it kept him from resting; that the skin on his body peeled off from its effects, and that it was especially painful in the more tender parts of his body.

The record shows that Dr. Overton was called by plaintiff between 12 and 1 o'clock following this tarring and feathering; that he got to plaintiff's room while he was in the bathtub removing the tar and feathers with soap, water, and towels. It took something over an hour of rubbing and scrubbing for the removal of the tar and feathers. In assisting plaintiff to cleanse himself of the substance some of it got on the hands of Dr. Overton, and some on the back of his ear in using the telephone. He testifies that it had a smarting and stinging effect on his hands and back of his ear. His testimony is that about a week after that plaintiff's skin peeled off where the tar had been applied.

Dr. Overton says that plaintiff was in distress and appeared to be in pain when he got to the room, but suffered more in the latter part of the same day when the irritating substance began to develop its full action. After it had thus developed, his testimony is that plaintiff's face "was solid red, and evidently swollen. I judge, he says, that caused him a good deal of pain."

The defendants offered witnesses who testified that coal tar is not caustic. These witnesses said that some of the derivatives of coal tar are caustic, but that in its natural state it is not and will not burn. The use of the brush in applying the coal tar on plaintiff's body, particularly on the tender parts, no doubt, in our opinion, had an irritating effect on the skin. His red and swollen face, which showed up later in the evening, as testified to by Dr. Overton, makes it quite evident that the coal tar had had a burning and smarting effect.

Counsel for defendants contend that the red swollen face of plaintiff and the peeling off of his skin were not the result of the application of the coal tar, as it is not caustic in its natural state, but the effects to which we have referred must be ascribed to the use plaintiff made of the soap, water, and towels in his efforts to remove the tar and feathers.

It could certainly not be expected that plaintiff, in the condition in which he was placed, would have sent for an expert to have that substance removed, if there could have been any one capable of removing it without leaving any irritation.

Plaintiff immediately called for a physician who was the first one to succor him. Dr. Overton, a qualified and respectable physician, assisted him in using the water, soap, and towels. Plaintiff could do no more than that. By the acts of defendants, plaintiff was forced to use the means that he employed for relief, and, if the use of the water, soap, and towels caused the injuries, it was the direct result of the tarring and feathering. These injuries are one in law, legally inseparable, and are physical injuries.

This court has therefore jurisdiction on the demand for damages on this issue under article 7, § 10, Constitution 1921, page 39, where this court is given jurisdiction in suits for damages for physical injuries; and has also jurisdiction for the damages for mental torture claimed by plaintiff.

The other damages claimed by plaintiff for loss of dental practice, and for damages to his good name and reputation, are not within our jurisdiction, as was recently held by the Supreme Court in passing on a writ of review granted in this case.

The defendants Isaac G., Henry and Newton Starns filed jointly an original and amended answer.

In the original answer, Isaac G. Starns alleges that plaintiff had alienated the affections of his wife; that he was exasperated by that outrageous act, and that it is a well-settled principle of law that, when a person commits an act bringing about such exasperation, he cannot recover for any damages that flow from it.

This plea is one in justification, and under the answer is presented for the benefit of Isaac G. Starns. Such a plea can certainly not be effective in favor of Henry and Newton Starns, Isaac's codefendants, as to whom it is not pretended that plaintiff had ever committed any injury by word or deed.

This suit, it must not be overlooked, is not against Isaac G. Starns, individually and separately, who it may be true, caused his code-

fendants to commit the act with him. For such an act the parties are responsible, in solido, under article 2324, Civ. Code. We shall, however, consider the plea of justification as applying to the three codefendants under the decisions relied upon by counsel for defendants.

Counsel refer to Bankston v. Folks, 38 La. Ann. 267; Vernon v. Bankston, 28 La. Ann. 710. In each of these cases plaintiff was. the aggressor, and in a sudden quarrel was shot by defendant. In both cases it was held that the defendants had not acted in self-defense and were not blameless. The court held, however, that, as the plaintiffs were at fault in thus provoking the quarrel and combat, they could not recover damages. It is obvious that under the facts of those cases that the defendants acted suddenly in the heat of passion and without time for reflection or the exercise of their reasoning faculties.

Here there is nothing whatsoever to indicate that Isaac G. Starns and his codefendants had been provoked suddenly by the acts of the plaintiff and Mrs. Isaac Starns, or by their conduct which could have led them into some sudden acts of violence. The very act itself, as above detailed, repels the possibility of such a conclusion, and the facts of the case to which we shall refer will show that the tarring and feathering of plaintiff was the result of a premeditated well-planned conspiracy between the five Starns brothers, two of whom have not been sued.

It is shown by Colonel Amos Ponder, counsel in this case for defendants, that Isaac Starns saw him in reference to his troubles. Colonel Ponder advised him not to kill plaintiff, gave him no advice about the tar and feathers which was not alluded to or mentioned, but merely advised him to get a divorce. This visit, Colonel Ponder says, occurred two or three days before the tar and feather episode.

John E. Guess runs a drug store in Hammond. He says he sold six cans of coal tar to Newton Starns which he says, he believed, was the day before the tarring and feathering episode. There is no denial by Newton Starns that he bought this coal tar from Mr. Guess the day before it was used on the plaintiff. There is no doubt that at first Isaac Starns thought of killing plaintiff, but was evidently dissuaded, perhaps by the advice of Colonel Ponder, from committing such a deed, took a different course which resulted in a conspiracy with his brothers to tar and feather plaintiff. There was therefore deliberation and premeditation on the part of the three codefendants in carrying out their plan for the commission of the act on plaintiff, of which they are charged. This brings the case under the grasp of the ruling in Warner v. Talbot, 112 La. 817, 36 So. 743, 747, 66 L. R. A. 336, 104 Am. St. Rep. 460.

In that case a fire had occurred in the town of Dodson. Plaintiff, Warner, was suspected of having had guilty connection with the fire. He was hung up once or twice for the purpose of extorting a confession. The defendants offered evidence to show plaintiff's complicity in the fire which was excluded by the court. The Supreme Court maintained the correctness of the ruling below and in commenting thereon said: "If the defendants had been allowed to prove their suspicions of his complicity in the fire, such evidence would have been entitled to no weight by way of mitigation, for, even under the authorities which hold that provocation may be shown in mitigation of exemplary damages, the provocation must be immediate, whereas the alleged provocation in this case had occurred five days before the infliction of the injury."

In the case above quoted, as in this, actual damages were asked, and the reference of the quotation to exemplary damages is of no consequence, particularly in this state where they are not allowed.

The court said, further, it was a wholesome rule that whenever, by an act which he could have avoided, and which cannot be justified in law, a person inflicts an immediate injury by force, he is legally answerable in damages to the party injured. Here it is manifest that the act could have been avoided, and could not have been justified in law.

Further, the court said: "It is unnecessary to decide whether an immediate provocation can be shown by way of mitigation, since the defendants in this case had no immediate provocation and acted with entire deliberation."

Here, it is shown that two or three days before the tarring and feathering that Isaac Starns consulted Colonel Amos Ponder on the subject of his troubles, and had been advised not to take plaintiff's life but to sue for a divorce. We find that thereafter, on the day before the tarring and feathering, Newton Starns, Isaac's brother, bought six cans of coal tar from Mr. Guess, a druggist in Hammond, which was subsequently used by the defendants on plaintiff, as stated in the beginning of this opinion. Unquestionably, the act was done with entire deliberation and was the result of a plan conspired with care and preparation by the five brothers, three of whom are sued herein. As was said in the Warner Case, above cited, it is therefore "unnecessary to decide whether an immediate provocation can be shown by way of mitigation," although it may be appropriate to add here that there is not the slightest proof in the record that there had been any immediate provocation.

As before explained, Charles Starns by subterfuge induced plaintiff to take him to his home near Hammond from which he was driven under arms and by force by the defendants to some lonely spot in a wooded section of

Tangipohoa parish, was handcuffed, and was forced with pistols drawn on him to undress, and coal tar was liberally poured on his naked body from head to foot, the feathers were drawn from a split pillow and were applied to his tar-covered body. He was then permitted to slip his pants on, and in that condition, still under the force of arms, was driven to the city of Hammond, where he was dumped from his car in front of an all night open restaurant. He was in that manner exposed to public view, and from there he went to his room from where he first called on his friend, Dr. Overton, for assistance.

Tycer, night marshal, came up to the room while plaintiff was trying to wash off the tar and feathers from his skin, also McNeil.

It is almost impossible to accurately describe the feeling of disgrace and humiliation that plaintiff must have suffered by such treatment. Thrown out as he was from the auto, and dumped in one of the streets of Hammond in front of an open restaurant which exposed him to public view with this tar and feathers, unquestionably added to his sense of humiliation which he, no doubt, keenly felt from the time he was forcibly taken from the restaurant, and thereafter brutally treated by these defendants. There is no parallel case that we know of, and none has been cited by counsel, where an appellate court has been called upon to assess damages in a case of this character. We think, however, that the language used in the Warner Case, where there were much less aggravating circumstances, fits the situation, and where the court expressed itself as follows: "No amount of money could fully compensate a self-respecting man for such treatment." The sum of $5,000 was granted in that case for actual damages.

██ The bare recital of the facts herein, and without the necessity of any comments, shows the enormity of the offense committed by these defendants. The studied cruelty with which it was committed is not mentioned to show that the defendants were actuated by malice, vindictiveness, or revenge, because it is well settled by the decisions of our courts that no vindictive or exemplary damages are recoverable in Louisiana. The reference to the main features of the case is given to show the intense feeling of humiliation and disgrace that plaintiff must have experienced, together with the pains he must have suffered from the physical treatment to which he was subjected, which must be taken into consideration as the basis for the actual and compensatory damages that are allowable in this case.

Plaintiff says he would not go through the same experience for $600,000. No one, we believe, would undergo such experience for any amount.

The sufferings of the plaintiff were largely from fear, mental anguish, and humiliation, and it is therefore difficult for the court to make an accurate estimate of the damages plaintiff is entitled to recover.

In cases of offenses and quasi offenses, as was said in Germann v. 557 Tire Co., 167 La. 578, 120 So. 13, the court will fix the quantum of damages as best it can with the lights before it, and where much discretion must be left to the judge or jury.

Counsel for defendants refer to the unanimous verdict of the jury and to the judgment of the court rejecting plaintiff's demand, and contend that there should not be a reversal.

██ We have, in accordance with the jurisprudence of this state, given great weight to the verdict of juries, and of their approval by the district judges, as we took occasion to say in the case of Kennedy v. Opdenweyer, 11 La. App. page 540, 121 So. 636, 123 So. 906, 907, body of decision.

In passing on this question, we said, in conclusion therein, as follows:

"We have given the consideration due to the unanimous verdict of the Jury and the judgment affirming it, but, after a careful, patient analysis of the facts and testimony, and looking at the case from every angle, we find it impossible to affirm the judgment.

"We find that the verdict and judgment are manifestly erroneous, and that defendant is entitled to a reversal."

██ In this case, it is plaintiff who is entitled to a reversal, and we shall so decree, with damages in favor of plaintiff in the sum of $5,000.

It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from be annulled, avoided, and reversed; and it is further adjudged and decreed that plaintiff have judgment, in solido, against the defendants Isaac G. Starns, Newton E. Starns, and Henry Starns, in the sum of $5,000 with legal interest thereon from judicial demand, and that defendants pay all cost of suit.