FRUGÉ, Judge ad hoc.
Louis Gureasko, plaintiff-appellant, filed suit for damages in the sum of $1,500 allegedly for defects growing out of a dwelling house which the defendant-appellee constructed for plaintiff. The contract is loosely drawn.
Judgment was rendered by the District Court for the plaintiff in the sum of $300 from which judgment plaintiff has appealed.
The conditions complained of are that five ceiling joists (4"x8"x26/) which had *581 been installed were of inferior and undried lumber, and a green stain was bleeding through the varnish and that the concrete floor on the enclosed porch of the dwelling began to sink in certain places, due to faulty construction.
The issues are: (1) Was the discoloration of the ceiling joists caused by dampness of the atmosphere or by inferior and undried lumber or both? (2) Was the sinking of the concrete floor caused by faulty construction or the rising of the river or the shifting of the sandy ground on which the concrete flooring was placed? and (3) If the sinking of the concrete flooring was caused by faulty construction then was the flooring laid by the defendant in exact accordance with the instructions given him by the plaintiff, Mr. Gureasko ?
The testimony is conflicting in some respects. However, the trial court held that he found from the facts the following: 1. The location of which the home was built was a damp, woody area. The plaintiff selected the building site. 2. To the right of the home, as you face the porch, is a river. 3. On occasions the river rises and floods the terrain. 4. The home was built on the soil in a locale which is sandy. 5. The home is occupied off and on about six months out of the year, and when unoccupied it is closed. 6. Five joists are “discolored.” 7. Other lumber materials used in the home are also “discolored.” 8. The concrete porch flooring is twenty-six feet in length. 9. The concrete flooring was originally to be poured in the front of the home. It was changed upon request of plaintiff to the side. 10. There is no footing across the back of the porch. 11. The concrete flooring of the porch was approximately two inches lower, toward the back, at the entrance of the living quarters of the home.
A careful study of the record prompts us to conclude that the trial judge was not manifestly erroneous from these findings of facts. The record disclosed that the plaintiff selected the building site and this site is in a wooded area, in a pocket along the river while devoid of much sunshine and wind resulting in continual dampness, especially in view of the fact that the dwelling is occupied only half the time. The trial judge in effect decided that because of this. dampness occasioned by the close location of the dwelling to the river in a shady spot in a low pocket along the river, could not be charged to the defendant. He further concluded that the discolored joists was-caused by mildew resulting from the dampness. It is to be noted that the trial judge visited the scene and viewed the house and the location and was convinced in his own mind that the dampness caused the discoloration not only of the joists involved here but other varnished portions of the house, indoors as well as outdoors. He rejected the claim of plaintiff that the lumber was, undried or unfit but rather attributed the coloring to dampness. He has thus disposed of the first issue in favor of the defendant. On issues two and three, he found that the rise in the river caused a shifting of the sandy ground beneath the concrete porch. The trial court found the defendant at fault in not providing a footing for the concrete flooring on the back side of the porch, and in not providing additional support for the concrete porch, resulting in an inadequate foundation. But in so finding, he observed that on the other hand the flood waters reaching partly up to the foundation, caused the sand to sink, thus mitigating the obvious inadequacy of the support for the porch which the defendant should have provided.
Under the facts the Court allowed damages in favor of the plaintiff for the sum of $300.
In the measure of damages for breach of contract, Article 1934 of the LSA-Civil Code, provides that in the assessment of damages as well as in cases of offences, quasi and quasi contracts, much discretion must be left to the judge or the jury. In the early case of Green v. Farmers’ Consolidated Dairy Co., 113 La. 869, 37 So. 858, *582 our Supreme Court, faced with the problem of assessing damages similar to the situation here, stated that whilst the quantum of damages claimed had not been proved, nevertheless, as it appears that the plaintiff violated his contract and subjected defendant to inconvenience and annoyance, compensatory damages, at least a nominal amount, should be awarded. .And then the Court went on to state that this proposition was well founded in law and is supported by the jurisprudence of this State and cited with approval the case of Judice v. Southern Pac. Co., 47 La.Ann. 255, 257, 16 So. 816 and Bourdette v. Sieward, 107 La. 258, 264, 31 So. 630. In the case of Schmidt v. City of New Orleans, 160 La. 281, 107 So. 110, our Supreme Court stated that under the circumstances presented therein, the Court must fix the quantum of such damages as best it can with the lights before it, and find itself in the position of having to assess damages as in cases of offenses, quasi offenses and quasi contracts and further, in the later case of Germann v. 557 Tire Co., Inc., 167 La. 578, 120 So. 13, 15 stated:
“But the bare fact that a plaintiff cannot establish exactly the amount of damages suffered by him and occasioned by the fault of the defendant will not suffice to discharge said defendant, when it is clear that the plaintiff has in fact suffered some damages.”
The trial court in this case under his discretion pursuant to LSA-Civil Code Article 1934, supra, assessed the damages at $300. It is our considered opinion that there is no abuse of discretion by the trial court in fixing the damages at that figure. We find no manifest error in his facts.
For the above and foregoing reasons, the judgment of the District Court is affirmed.
Affirmed.