BAILES, Judge.
As lessee of a nine acre tract of land situated in St. Mary Parish, Louisiana, used for the cultivation of sugar cane, plaintiff, John Marsh, instituted this action against his lessor, Cleveland Lockett, praying for damages for wrongful eviction from the leased premises prior to expiration of the lease term. From judgment of the trial court awarding plaintiff damages in the sum of $200.00, defendant-lessor has appealed. Plaintiff answered the appeal requesting an increase in quantum. We are in accord with the conclusion of the trial court that the plaintiff-lessee is entitled to recovery but find that he is entitled to an increase in the amount of damages awarded.
Plaintiff-lessee contends that in January, 1960, he and defendant-lessor confected a verbal lease covering nine acres of land for a period of three years, at an agreed rental of one-fifth of the sugar crop produced thereon by plaintiff. Lessee further claims that in 1961, lessor rented the land to a third party (Ivory Armelin), who, in April or May of that year, took possession of the leased premises by entering thereon and plowing under some two and one-half acres of stubble cane then being cultivated by lessee. In addition, plaintiff alleges receipt of a letter from defendant’s attorney dated June 23, 1961, ordering plaintiff to vacate the premises or face legal action for eviction. Plaintiff concedes he relinquished possession of the premises pursuant to this mandate. He charges, however, that defendant thus breached the lease by failing to maintain plaintiff in peaceable possession of the leased premises, thereby rendering defendant liable to plaintiff for damages resulting from the loss of the sugar cane crop plaintiff was compelled to abandon to defendant.
Defendant asserts, however, it was his intention to rent the property for a cash rental of $200.00 annually for a period of three years,, which consideration plaintiff was unable to pay. According to defendant, it was agreed, therefore, that the lease would be for the year 1960 only and the rental was fixed at one-fifth of the sugar cane produced by plaintiff, it being also understood that in 1961 a new agreement would be made on a cash rental basis. In essence defendant avers that in early *789 1961, plaintiff advised defendant to get someone else to farm the land, thus abandoning the land and making it necessary for defendant to secure a new tenant, one Ivory Armelin, to carry on the farming operation. Defendant further alleges that when Armelin commenced plowing the land he was ordered off the premises by plaintiff, at which point defendant served notice on plaintiff to vacate the farm. Thereafter, defendant finished cultivating the crop and harvested the sugar cane produced in 1961.
In written reasons for judgment the trial court found that defendant-lessor breached the lease but that plaintiff-lessee’s proof of damages sustained was not definite and certain. However, the trial court allowed plaintiff recovery in the sum of $200.00 stating that in his opinion such award would do substantial justice between the parties.
In effect, appellant contends the trial court erred in: (1) finding that plaintiff established the existence of a lease; (2) holding that if a lease was proven it was for a period in excess of one year inasmuch as where no specific term for a predial lease is shown, it is presumed, according to LSA-C.C. Article 2687, to be for a period of one year; and, (3) awarding lessee damages when none were established with that degree of certainty required by law.
We find the evidence preponderates in favor of the conclusion the parties entered into a three year lease, the consideration for which was the payment to defendant-lessor of one-fifth of the crop grown by plaintiff.
Defendant testified he normally leased his land for three years but in this case made an exception because plaintiff could not pay the annual rental of $200.00 in cash. Therefore, to accommodate plaintiff the contract made was for one year with the consideration being stipulated to be one-fifth of the crop, it being understood a new contract would be made at the end of the year to provide for a cash rental thereafter. In January, 1961, plaintiff advised defendant that he would no longer work the land and suggested that defendant secure someone else to farm the property for the year 1961. Shortly before Easter, defendant effected a lease agreement with Ivory Armelin whereby the latter agreed to work the land. Approximately one week later defendant accompanied Armelin to the property and designated an area on which he directed Armelin to plant beans. Subsequently, plaintiff advised Armelin that he held the lease and instructed Armelin to work the beans but not to cultivate the sugar cane. Because of this conflict Armelin ceased all work, whereupon defendant contacted plaintiff and asked plaintiff to leave the property. He conceded that in late April or early May plaintiff went upon the land and did some work. Thereafter, in June defendant filed documents with the local county agent’s office indicating that defendant himself would farm the land in 1961. Defendant also acknowledges that on June 23, 1961, his attorney wrote plaintiff a letter demanding that plaintiff vacate the premises.
Testifying on behalf of defendant, Ivory Armelin stated that just prior to Easter, 1961, defendant asked him if he, Armelin, would like to farm defendant’s land. Armelin agreed and the week after Easter he began some plowing and was approached by plaintiff and asked to cease operations. He was unaware that plaintiff had leased the land. He further stated that when he began plowing it did not appear that anyone else had done any work in the field. Armelin also testified he paid defendant $200.00 annual rent in advance, which sum defendant refunded.
According to plaintiff, the lease agreement was entered into in January, 1960, for a three year term, the rental being stipulated to be one-fifth of the crop harvested. He also stated that at no time was a cash rental discussed and he expressly denied telling defendant in January, 1961, that he would no longer farm the land-Plaintiff added that he planted two and *790 one-half acres of cane in September, 1960, which he would not have done had he intended not to farm the acreage in 1961. He further testified that from January to May, 1961, he worked the land at various times, first draining off water, then off-bedding, fertilizing, spraying poison and chopping; but in May, 1961, defendant sent another party to the land and this party plowed under about two and one-half acres of stubble cane he was cultivating. On June 8th, defendant advised plaintiff that defendant wanted the land released at the end of 1961 and presented plaintiff with a written release which plaintiff refused to sign. Upon receipt of the letter from defendant’s counsel plaintiff discontinued all operations on the land.
Louis Comeaux, a farmer and constable called by plaintiff, testified defendant requested him to ask plaintiff to accompany defendant to a justice of the peace to make an agreement for a lease during 1961, but that defendant did not reveal the terms of the proposed lease. He also stated that while plaintiff had farmed the land during 1960, defendant did not wish plaintiff to continue. Comeaux conveyed defendant’s message to plaintiff in either March or April, 1961, but so far as Comeaux knew plaintiff never contacted defendant. According to Comeaux the usual term for an agricultural lease is three years and whereas he had personally farmed some lands with no lease at' all, he never agreed to a one year lease for the purpose of growing sugar cane.
Appearing in plaintiff’s tehalf, Herman Carline, a farmer, stated that in April, 1961, he and several other farmers assisted plaintiff in fertilizing the land in question. Thereafter, defendant asked Carline if he was interested in taking over the land. Carline declined the offer stating that it would not be right for him to assume control of the land inasmuch as defendant had rented the property to plaintiff. According to Carline, defendant’s reply was that it was defendant’s land and defendant could do with it as he wished. He declined all knowledge of the terms of the lease between plaintiff and defendant but from his discussions with plaintiff he was aware that there was some sort of contract. Carline also stated it was customary in the area to lease sugar lands for three years because plant cane could be harvested for that period without replanting.
Willie Lewis, also a farmer, testified in effect that in late April or early May, 1961, he assisted Carline in fertilizing the cane on the land in question.
We conclude the evidence establishes agreement between the parties to this litigation to lease the acreage in question for a period of three years at a rental of one-fifth of the crop. The weight of the evidence is clearly to the effect that it is customary for such leases to be for a period of at least three years because sugar cane planted by the lessee will return some yield for three seasons. Moreover, it is most unlikely plaintiff would have planted sugar cane in the fall of 1960, if his lease were to expire at the end of that year. Further, the testimony of Comeaux and Carline, concerning the actions of both the plaintiff and the defendant, points to the conclusion that there was a three year lease in effect between the parties for this sugar cane acreage. Having found the lease to be for three years, the question of tacit reconduction raised by defendant becomes moot. .
Turning to the question of the amount of damages to be awarded to plaintiff, we find ourselves in agreement with the trial court that the proof of damages sustained by plaintiff was not certain. The measure of damages recoverable in cases of this nature is established in LSA-R.S. 9:3203, which states:
“Any lessor of property to be cultivated who fails to permit the lessee to occupy or cultivate the property leased, is liable to the lessee in an amount equal to the market value of the average crop that *791 could have been grown on the land or on like land located in the immediate vicinity.”
The evidence reveals that defendant’s one-fifth of the 1960 crop yielded a rental of about $140.00 for that year. Defendant made no attempt to conceal his disappointment over this return, which he considered inadequate. It appears that 67 Y2 tons of sugar cane were raised on the defendant’s land in 1961, and that he received $632.33 for the sugar cane he sold that year. The record does not reflect with certainty whether all of the 671/2 tons were sold by the defendant when he received this amount. The defendant testified that he used 30 or 35 tons of the 1961 crop for plant cane, but we cannot determine whether this estimate for plant cane would be included in or be in addition to the 671/2 tons that were raised. We do take note of the fact that whatever quantity of cane was raised on this land in 1961, the crop was less than could have been raised since Armelin had plowed up two and one-half acres of stubble that could have been productive that year.
The plaintiff offered his uncorroborated testimony regarding this amount which would have been due him from the sale of the crop had he not been forced to relinquish possession of the land. First, he estimated what the crop yield would have been at harvest time, and then using the price received during the previous year less the previous year’s costs for harvesting and marketing, arrived at a monetary value for the crop. Such testimony is of some probative value under the circumstances prevailing herein, but is not of itself sufficient to establish with any degree of certainty the damages to which the plaintiff is entitled. However, we think the trial court was correct in exercising the discretion resting in him to allow such recovery as appears justified in the light of the circumstances disclosed when damages are shown but not proved with certainty. Germann v. 557 Tire Co., 167 La. 578, 120 So. 13; Campo v. LaNasa, La. App., 173 So.2d 365; Prejean v. Delaware-Louisiana Fur-Trapping Co., 13 F.2d 17 (5th Cir.) and the cases cited therein. But, in light of the record taken as a whole, we feel that an award of $400.00 would more nearly approximate substantial justice between the parties.
For the reasons herein assigned, the judgment of the trial court is amended, and as amended it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, John Marsh, and against the defendant, Cleveland Lockett, for the sum of $400.00, together with legal interest thereon from the date of judicial demand, and all court costs.
Affirmed and amended.