CHASEZ, Judge.
This is an action by Mr. and Mrs. Charles J. Menard, the owners of two apartment buildings located at 1522 and 1526 Second Street in the City of New Orleans, for damages allegedly done to their property by pile-driving operations performed in connection with the construction of the Andrew Jackson Apartments.
Plaintiffs filed suit numbered 411-442 of the Civil District Court of the Parish of Orleans against the owner of the building site, Andrew Jackson Apartments, Inc., the general contractor on the job, Perrilliat-Rickey Construction Company, Inc., and their insurer, American Mutual Liability Insurance Company; as well as the pile-driving contractor, Raymond International, Inc. and its insurer, Liberty Mutual Insurance Company.
Plaintiffs filed a separate suit, numbered 411-443 of the Civil District Court of the Parish of Orleans against their own insurer, Queen Insurance Company of America, which had issued two policies of fire and extended coverage on plaintiffs’ buildings.
In the first suit, No. 411-442, Andrew Jackson Apartments Inc., Perrilliat-Rickey Construction Company, Inc. and their insurer, American Mutual Liability Insurance Company, filed a cross-claim against Raymond International, Inc. and its insurer, alleging that any damage or change in the condition of the buildings was caused by Raymond International, Inc.
In the second suit, No. 411-443, Queen Insurance Company of America filed a third-party petition against the defendants in the first suit, alleging that if the plaintiffs did obtain judgment against Queen, then Queen was entitled to a judgment over and -against these third-party defendants.
A third suit was filed by Queen Insurance Company of America against Andrew Jackson Apartments, Inc., Perrilliat-Rickey Construction Co., Inc. and Raymond International, Inc., alleging that the defendants were indebted to Queen in the sum of $30,000.00, the amount demanded by plaintiffs on their insurance contracts with Queen. This third suit was met by defendants’ exception of prematurity on the ground that it was a claim for an unliqui-dated damage. Queen then moved for a dismissal of the suit without prejudice, which was granted. No appeal was taken from this dismissal, therefore this suit is not properly before us; however the merits of this suit are identical with those in the third-party demand by Queen in plaintiffs’ sttit against it, which is before us and will be discussed below.
A motion was filed by Queen Insurance Company of America to consolidate plaintiffs’ suit No. 411-442 with plaintiffs’ suit No. 411-443. This request for consolidation was granted and the entire litigation then came before the Court. The trial judge, pursuant to the authority of R.S. 13:1171 transferred the matter to the Commissioner of the Civil District Court for the Parish of Orleans. The Commissioner proceeded to hear the case and rendered his recommendations in which he found that plaintiffs’ buildings were damaged by the pile-driving operations performed in connection with the construction of the adjacent Andrew Jackson Apartments. He found no negligence however on the part of the pile-driving contractor, Raymond *251 International, Inc., or the general contractor, Perrilliat-Rickey Construction Co., Inc., and recommended that they and their insurers be dismissed from the suit. He recognized that the liability of the landowner, Andrew Jackson Apartments, Inc. and its insurer was not dependent upon a finding of negligence, but rather on the operation of LSA-C.C. art. 667. Pursuant to this article he recommended judgment against the landowner and- -its insurer-. Further he recognized that Queen Insurance Company of America was liable to the plaintiffs under its contract of insurance with them.
The Commissioner set the sum of $46,-800.00 as proper quantum for damage caused to the buildings and restoration thereof. The basis for this determination was his opinion that 60% of the damage which he found to be existent in the buildings was the result of the construction operation, and the remaining 40% of the damage pre-existed any construction activity-
Finally he recognized the right of Queen Insurance Company of America to recover on its third-party demand any amount it pays to the plaintiffs under the contracts of insurance, from the landowner and its insurer.
The Commissioner recommended that all other third-party demands and cross-claims made by the defendants be dismissed.
Various exceptions to the Commissioner’s Report were filed by all parties to the suit. These exceptions were argued before the trial judge who subsequently adopted the report and its recommendations as his own. He rendered judgment in favor of plaintiffs in the sum of $46,800.00 with legal interest from date of judicial demand, as follows: $30,000.00 against Queen Insurance Company of America; $16,800.00 against Andrew Jackson Apartments, Inc. and its insurer, American Mutual Liability Insurance Company. He ordered that there be judgment in favor of the defendants, Perrilliat-Rickey Construction Co., Inc. and its insurer, American Mutual Liability Insurance Company; and Raymond International, Inc. and its insurer, Liberty Mutual Insurance Company, dismissing plaintiffs’ suit as to them. He further ordered that the third-party petition and cross-claim of Andrew Jackson Apartments, Inc., Perrilliat-Rickey Construction Co., Inc. and American Mutual Liability Insurance Company against Raymond International, Inc. and Liberty Mutual Insurance Company be dismissed, and the third-party demand of Queen Insurance Company against Perrilliat-Rickey, Inc. and Raymond International, Inc. be dismissed.
Finally, he ordered that there be judgment in favor of third-party plaintiffs, Queen Insurance Company of America, against the third-party defendants, Andrew Jackson Apartments, Inc. and its insurer, American Mutual Liability Insurance Company, in the full sum of $30,000.00. He decreed that all parties to the suit bear their own costs.
Appeals were taken by Andrew Jackson Apartments, Inc. and its insurer, American Mutual Liability Insurance Company, as well as Queen Insurance Company of America. The plaintiffs have answered both appeals.
The defendants, Perrilliat-Rickey Construction Co., Inc., Raymond International, Inc. and their respective insurers, are no longer in this suit, as none of the appellants have appealed from that part of the judgment dismissing the main demand and third-party claims and cross-claims against them and the plaintiffs themselves did not attempt in their answer to the appeals lodged herein to have the judgment revised so as to include these defendants. It was in fact conceded by all parties to this suit in their briefs and oral argument before this court that the question of the liability of these defendants is no longer at issue.
We are left then with a consideration of the liability of appellants Andrew Jackson Apartments, Inc., its insurer American Mutual Liability Insurance Company, and *252 Queen Insurance Company of America, the insurer of plaintiffs, Mr. and Mrs. Men-ard.
The basis for the appeals lodged by these parties is that the evidence adduced was insufficient to hold that plaintiffs’ buildings were damaged by the pile-driving operations, particularly to the extent that the trial judge found, and therefore there is no support in the record for a dollar award in the amount rendered.
Plaintiffs’ buildings are located on the property adjacent to and immediately behind the construction site. These buildings are both two stories tall and each is composed of four apartment units. The buildings are approximately thirty or thirty-five years old and of masonry construction with stucco exterior finish.
The plaintiffs’ chief witness was Robert W. Cummins, an architect commissioned to examine the premises for damage caused by construction activitiy. Cummins personally inspected the premises and prepared drawings showing the areas of damage. He let bids for the work he found was required to restore the buildings. He testified it was impractical, if not impossible, to separate just the damage caused by the pile-driving operations and that damage which preexisted the construction. He therefore included all the damage which appeared in the structures in his request for bids. Cummins classified damage he observed into three categories: New cracks, old cracks and old cracks which had been recently extended. He said he could not definitely establish the cause of these cracks but he did state:
“Q. Mr. Cummins, assuming again whatever cracks existed prior to the construction activities were caused by one or more of the things which you have enumerated in answer to my questions, are you telling the Court that when Per-rilliat-Rickey began to construct the Andrew Jackson Apartments all these conditions ceased to exist, these occurrences quit happening and the construction alone caused whatever cracks that you saw there?
“A. No, I am not telling the Court that, I am telling the Court that some vibrations just prior to my inspecting the job had caused new cracks and they had caused the existing cracks to extend length-wise and increase in their deepness, that is what I am telling the Court, that there were existing cracks that were possibly not affected by these vibrations.”
and again:
“Q. But you don’t know what condition it was in before the pile driving, do you?
“A. Not specifically, but I do know that both buildings survived from the recent vibrations and that the bulk of the damage was new.
“Q. And you feel that would be the result of the cumulative effects of the pile driving ?
“A. Yes.”
Two construction firms submitted bids on the job, the lowest of these was for $78,000.00. It is this figure which the commissioner used as a guide to setting the amount to be awarded plaintiff. He noted that at one point Cummins stated that if he had to guess he was of the opinion that 80% of the damage he saw in the premises was new. The Commissioner himself however, was of the opinion that only 60% of the damage was new and caused by the pile-driving operations, hence he set the $46,800.00 figure.
Defendants called as witness on their own behalf a contractor, two property claims adjusters, and various experts in seismagraphic measurements.
The seismagraphic experts stated that from their tests ran during these operations, vibrations did not reach the level which could cause property damage. They admitted however that they did not meas *253 ure and record the driving of each and every pile, approximately 200 in number,
The contractor, Earl J. Markey, stated that he examined the property after the test piles had been driven, but before the main pile-driving work was done. He noted a good deal of old damage which he considered to have been caused by natural settlement, age and soil conditions and some new cracks. However, he stated that it was his opinion that these new ‘cracks were not caused by the pile-driving operations.
The two property claims adjusters also testified as to their examination of the Menard premises. They were likewise of the opinion that the damage they observed had occurred some years before the construction work involved in this suit, although they did note some newer damage which they did not relate to the pile-driving operations.
Plaintiffs testified on their own behalf, and told of noting heavy vibrations while the pile-driving was going on. Mr. Men-ard stated that his buildings were in very good condition before the work took place and virtually all the damage which was noted by the architect Cummins occurred during the driving of the piles.
From an examination of all the evidence in the record before us we come to the conclusion that the Menard property did suffer some damage as a result of the pile-driving operations undertaken by the neighboring landowner, Andrew Jackson Apartments, Inc. It is most difficult however to estimate with exact certainty the total amount of this damage. Nonetheless we do not find that the plaintiffs should be denied recovery in this situation, for it is virtually impossible in any case such as this to reach anything more than a sum which reasonably approximates the damages incurred.
In the recent case of Monteleone v. Boh Bros. Construction Company, 217 So.2d 754, La.App. 4 Cir.1969, we were faced with this same problem which faces us as herein and stated at 756 and 757:
“[1]. We are not unmindful of the burden of proof carried by the plaintiff to establish with a preponderance of evidence the extent of damage and the cost of repair. The remand was ordered by us’ on the first appeal to give her an opportunity ‘to prove the actual compen-sable damage she suffered as a result of the activities of the Board of Levee Commissioners.’ The defendant now argues that because the plaintiff has failed on remand to establish the proof we found wanting on the first appeal, her petition should be dismissed.
“We have commented above that nothing of substance has been added and that we are in no better position now than on the first appeal to assess the damage for which the Board of Levee Commissioners is liable. We will not, however, deny plaintiff recovery, for we are convinced that substantial damage to her property was the direct consequence of the heavy construction work on the Marina. We are equally convinced that her property would have suffered some damage if the Marina had never been built. We also recognize the futility of any attempt to define with any degree of certainty the proportion of damage attributed to soil subsidence for which this defendant was not responsible and that which was caused by or from acceleration of subsidence as a result of its construction work.
“[2], In a situation such as we have here, the court must exercise its discretion and seek to make compensation which will most nearly comport with the demands of justice. We must fix the damage as best we can from the evidence before us. Germann v. 557 Tire Co., Inc., 167 La. 578, 120 So. 13 (1928); Bruno v. Employers’ Liability Assurance Corp., 67 So.2d 920 (La.App.Orleans 1953).”
* * * * * *
*254 “In Germann v. 557 Tire Co. Inc., supra, the Supreme Court found that the estimate of cost to restore the plaintiff’s property was ‘about $3,000.’ It also found that there were four causes each of which in some degree contributed to the total damage, and said at 14-15 of 120 So.:
‘It is therefore impossible to say exactly how much of said damages was caused by the operation of the press, since no survey of said building was made at the time the operation was begun. But it is none the less quite certain that some of said damage was caused thereby.’
The court then divided the estimate by four and, accordingly, assessed the damage against the defendant at $750.
“[3]. Applying that formula to the present case where there are at least two causes which, in our opinion, contributed to the total estimated damage to plaintiff’s property and the defendant Board of Levee Commissioners being responsible for one of them, it should be assessed with one half the estimated damage. Accordingly, we will accept the figure of $24,000 as a reasonably fair estimate of the damage to plaintiff’s property from all causes.
“There was evidence that the property had been substantially improved after its purchase by Mrs. Monteleone, and apparently the repairs recommended by Mr. Stoffle would have restored it completely. Such repairs as might have been necessary from normal depreciation during approximately 20 years of occupancy apparently were not taken into account in Mr. Stoffle’s estimate. For these reasons we think our estimate is most favorable to the plaintiff, and an award of $12,000 in damages against the Board of Levee Commissioners would do substantial justice. LSA-C.C.P. art. 2164.”
Applying this formula recognized in Germann v. 557 Tire Co., 167 La. 578, 120 So. 13 (1928) and followed by us in the Monteleone case, we find that the award does reasonably approximate the amount of damage suffered by plaintiffs herein.
As we noted previously, this award was derived by taking 60% of the amount quoted in the lowest bid received to restore the plaintiffs’ property to a good condition. Taking into consideration the age of plaintiffs’ buildings and the natural effect of soil subsidence over the years, we cannot find that a 60% figure represents an abuse of the discretion allowed the trial judge in assessing damages in these cases. Certainly the plaintiffs have been adequately compensated by this award, and at the same time it does substantial justice to the defendants herein.
We turn now to the question of penalties and attorney’s fees raised by plaintiffs in their answer to the appeals filed herein. It is plaintiffs’ position that their insurer, Queen Insurance Company of America, arbitrarily and capriciously refused to pay on the policies of insurance procured by plaintiffs for just such an eventuality as occurred, and thus are liable for the statutory penalties and attorney’s fees imposed by LSA-R.S. 22:658.
We cannot agree with plaintiffs’ contention. We have expressed above at length the difficulty with which the matter of liability and extent of damage was resolved by the Commissioner, the trial judge and ourselves after a full hearing and examination of all the evidence adduced during seven days of trial. Certainly the issue was in serious doubt until the full hearing was held, thus we cannot find that the defendant, Queen Insurance Company of America, was in any way arbitrary and capricious in refusing to pay on its policies before judgment was rendered against it.
Finally we note that the judgment of the lower court was in error in that it failed to render judgment for the full amount of damages against Andrew Jackson Apartments, Inc. and its insurer, American Mutual Liability Insurance Company, but in *255 stead awarded judgment against Queen Insurance Company of America for $30,000.-00 under its policies of insurance with plaintiffs, and then the remaining $16,800.-00 against Andrew Jackson Apartments, Inc. and its insurer, recognizing Queen’s third-party demand to recover any amount it pays on the judgment over and against Andrew Jackson Apartments, Inc. and its insurer.
The defendant, Andrew Jackson Apartments, Inc., as owner of the land on which the piles were driven, is liable for all the damages caused thereby. This liability is in no way affected by existing policies of insurance which the plaintiff may have had in force at that time. Hence we must recast the judgment to grant plaintiff recovery against Andrew Jackson Apartments, Inc., and its insurer, for the sum of $46,800.00.
For the reasons hereinabove stated the judgment of the trial court is recast, and as recast is affirmed, as follows:
It is hereby ordered, adjudged and decreed that there be judgment in favor of Mr. and Mrs. Charles J. Menard against the Andrew Jackson Apartments, Inc., and its insurer, American Mutual Liability Insurance Company in solido in the sum of $46,800.00; it is further ordered, adjudged and decreed that there be judgment in favor of Mr. and Mrs. Charles J. Menard against Queen Insurance Company of America in the sum of $30,000.00, subject to the proviso that plaintiffs, Mr. and Mrs. Charles J. Menard, shall not recover more than a total amount of $46,800.00 from the three judgment debtors; and finally, it is ordered, adjudged and decreed that Queen Insurance Company of America shall recover from Andrew Jackson Apartments, Inc. and its insurer, American Mutual Liability Insurance Company, in solido, so much of the amount as it is required to and does in fact pay to plaintiffs, Mr. and Mrs. Charles J. Menard under this judgment. The appellants, Queen Insurance Company of America, Andrew Jackson Apartments, Inc., and its insurer American Mutual Liability Insurance Company, shall share all costs of this appeal.
Affirmed.