MILLER, Judge.
Plaintiff appealed the dismissal of his suit seeking damages from defendants Or-kin Exterminating Company, Inc., and its bonding company Massachusetts Bonding *917 & Insurance Company. Plaintiff’s home became infested with termites and as a result suffered damages while the home was under contract with Orkin.
The trial court held that plaintiff failed to prove negligence and certainly not gross negligence, on the part of Orkin. We find to the contrary.
Plaintiff’s testimony indicates a belief that Orkin, in effect, insured against a reinfestation of termites and resulting damage. But the contract does not so provide. The contract was dated July 11, 1953. Annual renewals kept it in effect through July 1968 and the infestation was discovered in January 1968. The contract provided that Orkin would :
“ * * * reinspect the premises treated at semi-annual intervals and to apply, at no extra cost, any additional termite control treatment found necessary * * (Emphasis added.)
******
“Should any reinfestation occur in any portion of the building covered by the contract during its duration, the termite contractor agrees to treat such infested portions within 30 days of discovery of such reinfestation without additional charge to the owner.”[1]
******
“ * * * nor shall the termite contractor be responsible for damage done to the building and its contents by termites except damage caused by gross negligence of the termite contractor.”
Orkin inspected the property annually instead of semi-annually, as required by the contract. On June 1, 1967, Mrs. Riguad paid the annual renewal of the Orkin contract and received notice that her July 11, 1953 contract was renewed for the period July 1967 to July 1968. On June 8, 1967 Orkin sent an employee with six months’ experience (four as a termite eradicator and two as termite inspector) to make the annual inspection. This employee was discharged two months later when he had an accident while driving an Orkin truck.
Plaintiff’s wife denies her signature to the Orkin inspection form showing that this employee made the June 8, 1967 inspection, but she did not admit or deny that he came into her home on the day he allegedly made the inspection. The trial court’s finding that the June 8, 1967 inspection was made is persuasive to this court. Nevertheless it appears that Orkin made only one inspection per year, and did not intend to reinspect the home until the next annual renewal of their contract.
Orkin’s Lafayette manager Harold R. Smith was notified about the infestation during the later part of January 1968. He went to the home and found two termite tunnels coming up the outside of brick piers on the north side of the house. Tr. Vol. 2, p. 10. There is no evidence of any other infestation. We find that the damage found in January 1968 establishes that the termite infestation was established prior to the June 8, 1967 inspection; that Orkin was grossly negligent for failing to find the infestation at that time. Orkin’s manager, Mr. Smith so stated in his claim report to his superiors in precisely this language:
“Reinspector failed to find termites entering up the outside of 2 brick piers.” [2]
Elsewhere in the report, Mr. Smith stated:
“We are liable for damage, * * *.”
*918 The trial judge disregarded the statement that “We are liable for damage” holding that it was a conclusion of law and an admission made under mistake or error. He applied the rule that a party cannot be bound by an admission of fault if the facts developed on trial lead to the conclusion that he was free from liability. Procell v. Peerless Ins. Co., 137 So.2d 447 (La.App.2d Cir.1962); Santiago v. Brondum, 75 So.2d 565 (La.App. Orleans 1954).
But the trial judge did not mention the statement in the same report that the reinspector failed to find termites entering (along) the outside of 2 brick piers. The trial court accepted the testimony of the discharged Orkin employee that he inspected the outside of the pillars in the infested area and found no termite infestation. This holding is manifestly erroneous.
Orkin’s employee had very little experience. His manager reviewed the matter when the infestation was discovered and concluded that his employee failed to make the proper inspection. This conclusion was not hurriedly made, but was in a report made several weeks after the infestation was discovered and eradicated.
Although the expert testimony does not establish the length of time it would take to cause the severe damage suffered by plaintiff’s home (the worst ever seen by Orkin’s employees in the Lafayette area), we find that the two inch tunnels did not supply an extensive infestation.[3] Therefore, it would be expected to take more time to cause the damage found in plaintiff’s home.
We are impressed with the considered statement of Orkin’s manager and his testimony at trial that his employee failed to detect the infestation at his June 1967 inspection. The discharged employee’s testimony that he “pushed the grass away so I could check the pillars.” Tr. Vol. 2, p. 301, does not prevail over his employer’s testimony.
Furthermore plaintiff’s contract called for a semi-annual inspection on or about December 8, 1967. Should we accept Or-kin’s contention that the damage found in plaintiff’s home could have resulted from a brief but heavy infestation and that plaintiff’s home was heavily infested, then defendants are liable for damages resulting from their gross negligence in failing to make the required semi-annual inspection.
We distinguish the case of Pothier v. Barber Laboratories, 227 La. 357, 79 So.2d 481 (1955). There is no discussion in Pothier of the basis for our decision — that the termite eradicator failed to make a required inspection, or if the inspection was made, it was made in a grossly negligent manner.
Mr. Smith described the damage he saw at his January 1968 inspection:
“On the north wall approximately sixteen or seventeen foot of sill line was damaged; the outside sheeting was damaged. It looked like about three or four feet from the sill line up; there’s a little damage on the right corner of the sill facing the house joining this north end of the house; on the inside of the' house there’s one little spot, I would say, about three-quarters of an inch in diameter in the celotex wall approximately under the window on the north end of the house.”
This appraisal of termite damage was supported by the preponderance of the tes- ■ timony. The sills were 4 inches by 6 inch *919 es. All appraisers stated that they would not be responsible for repairing hidden damage. It is plaintiff’s contention that it is necessary to demolish his home in order to determine whether or not there is hidden damage. Plaintiff seeks $21,000 as the cost of demolishing and rebuilding his home.
One difference between the appraisals presented by plaintiff and defendants concerned the allowance for unforeseen difficulties. Additionally, there was substantial difference based on the extent of repainting or redecoration. Plaintiff contended that the outside of the entire house should be repainted while defendants submit that only the replaced siding should be repainted. In the interior, plaintiff’s appraisers allowed for reworking all four walls of both the living room and dining room, whereas defendants proposed replacing only one wall of the living room.
The problem is further complicated by the fact that all repairs suggested for plaintiff’s 18 year old home were not due to termite damage. Some repairs were scheduled for areas damaged by “wet rot”- and insects not subject to Orkin’s contract. Although plaintiff related all repairs to termite damage, the preponderance of the evidence is that substantial repairs were proposed by his estimates for problems not related to the termite infestation.
Plaintiff’s first estimate totaled $910.94.[4] This estimate was not furnished even though requested of plaintiff by defendant’s interrogatories. During cross-examination plaintiff mentioned it. Other estimates presented by plaintiff were in the $3,000 range.
We accept the $1,004.49 appraisal by Mr. A1 Hebert of Monies Lumber Company, Inc. It was updated at the trial, and was limited to items related to termite damage. The appraisal contemplated painting only the replaced asbestos siding. We are impressed with the testimony that it will be necessary to repaint the entire side of the house where the siding is replaced, and for this we allow an additional $150.
In assessing damages of $1,154.49 we allow no recovery for termite damage sustained before Orkin failed to make a proper inspection. Under the terms of Orkin’s contract, that damage is not compensable. It is impossible to determine exactly when this infestation began and how much damage was sustained before the June 8, 1967 inspection. Particularly appropriate here is the statement of the Louisiana Supreme Court in the case of Germann v. 557 Tire Co., 167 La. 578, 120 So. 13 (1928) at 120 So. 15:
“But the bare fact that a plaintiff cannot establish clearly exactly the amount of damages suffered by him and occasioned by the fault of the defendant will not suffice to discharge said defendant, when it is clear that plaintiff has in fact, suffered some damages. Green v. Farmers’ Consolidated Dairy Co., 113 La. 869, 37 So. 858.
“Under such circumstances, the court must fix the quantum of such damages as best it can with the lights before it, and finds itself ‘in the position of having to assess damages “as in cases of offenses, quasi offenses and quasi contracts,” wherein “such discretion must be left to the judge or jury.” ’ Schmidt v. City of New Orleans, 160 La. 281, 107 So. 110.”
Plaintiff has cited no authority for his request for $10,000 damages for inconvenience, past, present and future embarrassment and humiliation to plaintiff and his family due to the presence of termites in his home and the. consequent damage done. As noted at the outset, Orkin did not contract to keep termites out of plaintiff’s home — only to inspect semi-annually and eradicate subterranean termites within 30 days of their discovery.
*920 Massachusetts Bonding- & Insurance Company’s Subterranean Termite Control Guaranty expressly states that “The total period for each guaranty shall not exceed five years.” Since this bond was written in 1953, it expired before this claim came into existence. The trial court judgment dismissing the suit against Massachusetts Bonding & Insurance Company is affirmed.
The trial court’s judgment in favor of defendant Orkin Exterminating Co., Inc. is reversed and set aside. Plaintiff Lewis Rigaud is granted judgment against defendant Orkin Exterminating Co., Inc. for the sum of $1,154.49, together with legal interest thereon from judicial demand until paid. Trial and appeal costs are taxed to Orkin Exterminating Co., Inc.
Affirmed in part and in part, reversed and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., not participating.

. Orkin complied by effectively exterminating the termites within 30 days of notice.

. Mr. Smith explained why the infestation was not discovered earlier at Tr. Vol. 2, p. 36:
“The only thing that I can personally see for the reason not being detected was due to the fact that there’s a cliain-link fence that runs approximately eleven inches from the house. When I made my first inspection this fence was up and there was considerable heavy grass in-between the fence and the house, and I know this is due to the fact that a mower couldn’t have gotten inside to clip this grass. But the grass was extending up approximately to the sill lines. And I say this is the rea *918 son that the man was unable to detect an infestation.
“THE COURT: You say the man couldn’t detect. Which man would you be talking about?
“THE WITNESS : The re-inspector that made the re-inspection in the latter part of 1967.”

. Plaintiff and his wife estimated an extremely heavy infestation, but they were not experts in this field. Orkin’s employees did not find a heavy infestation.

. Raised 20% at trial because of inflation.